1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES  DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

IN WELLS FARGO HOME MORTGAGE
OVERTIME PAY LITIGATION

No. MDL 06-1770 MHP

This Document Relates To:

ALL ACTIONS

**MEMORANDUM & ORDER**
**Re: Nationwide Plaintiffs' Motion to**
**Certify a Class and Collective Action**

This multidistrict litigation arises from three putative collective actions and one putative class action against defendant Wells Fargo Home Mortgage ("defendant" or "Wells Fargo") on behalf of defendant's Home Mortgage Consultants ("HMCs").  Now before the court is the nationwide[1] plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23, and for collective action certification pursuant to the Fair Labor Standards Act ("FLSA").  After considering the parties' arguments and submissions and for the reasons set forth below, the court rules as follows.

BACKGROUND

Plaintiffs in this MDL proceeding are current and former HMCs employed by Wells Fargo from February 2001 to the present.  The nationwide plaintiffs seek certification of two classes.  First, plaintiffs seek to certify a class of Home Mortgage Consultants who worked nationwide, but not in California, pursuant to Federal Rule of Civil Procedure 23 to pursue claims for restitution under California's Unfair Competition Law, Cal. Bus. & Prof. Code sections 17200 et seq. ("UCL").

1   Second, plaintiffs seek to certify a nationwide collective action of non-California HMCs who

2   affirmatively opt in to this case to pursue claims for damages under the Fair Labor Standards Act, 29

3   U.S.C. section 216(b) ("FLSA"). The UCL provides a vehicle for recovery of restitution predicated

4   on an alleged violation of the FLSA.

5          Wells Fargo is a world-wide financial services company, with its headquarters in San

6   Francisco, California. Hanson Dec., Exh. 1; Strother Dep. at 32:18–33:10; Meuers Dep. at

7   168:19–170:2. Wells Fargo is subject to the requirements of the FLSA. Cahalan Dep. at 81:9–20.

8   The exemption status of each position within Wells Fargo is determined by the Corporate

9   Compensation department and the in-house legal department based on the duties and responsibilities

10  of the position. Hanson Dec., Exhs. 6 & 7.

11         "Home Mortgage Consultant" is the title given to Wells Fargo employees who sell

12  mortgages. Wells Fargo employs approximately 10,000 HMCs nationwide, and may have employed

13  as many as 25,000 total over the past five years. Blackwell Dep. at 38:9; Heiden Dep. at

14  25:8–26:11. Approximately 20% of HMCs are employed in California. HMCs are classified

15  according to specialty. Approximately 90–95% of HMCs are designated as "prime" or "sub-prime,"

16  while the remaining HMCs are classified as "reverse," "emerging markets," "renovation" and

17  "builder." Cahalan Dep. at 34:25–35:16. Plaintiffs claim that regardless of any variations among

18  HMC classifications, all Wells Fargo HMCs have the same basic job duties and share virtually

19  identical job descriptions. Hanson Dec., Exhs. 10–13; Heiden Dep. at 62:24–63:1.

20         The primary duty of all HMCs is to sell mortgage loan products. Plaintiffs claim that HMCs

21  spend virtually all of their time in a Wells Fargo office while performing their sales duties, primarily

22  through the use of office telephones and computers. Additionally, plaintiffs claim that HMCs spend

23  considerable time engaged in clerical tasks associated with loan processing. Ashworth Dec. ¶¶ 3–5,

24  8–9; Bowne Dec. ¶¶ 3–5, 8–9; Dees Dec. ¶¶ 3–5, 7–8; Duncan Dec. ¶¶ 3–5, 8–9; Fitzgerald Dec. ¶¶

25  3–5, 8–9; Grabow Dec. ¶¶ 3–5, 8–9; Hardy Dec. ¶¶ 3–5, 8–9; Hayes Dec. ¶¶ 3–5, 8–9; Lee Dec. ¶¶

26  3–5, 8–9; Lovrien Dec. ¶¶ 3–5, 8–9; Lunde Dec. ¶¶ 3–5, 8 & 10; Madsen Dec. ¶¶ 3–5, 8–9; Magott

27  Dec. ¶¶ 3–5, 8–9; Pejoves Dec. ¶¶ 3–5, 8–9; Sykes Dec. ¶¶ 3–5, 8–9; Tugel Dec. ¶¶ 3–5, 8–9;

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

2

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Valdez Dec. ¶¶ 3–5, 8–9.  The court notes that each of plaintiffs' seventeen declarations are

2   substantially identical in format and wording.

3        All HMCs are paid pursuant to the same basic compensation policy, whereby they receive

4   commissions on the mortgage loans they sell.  Cahalan Dep. at 39:16–17; 168:2–170:1.  On January

5   1, 2005, Wells Fargo began paying HMCs a minimum "draw" of at least $2,000 per month.  Cahalan

6   Dep. at 39:23–41:16.  Prior to that time, there was no guaranteed minimum compensation for HMCs.

7   Id. at 41:2–6.  Wells Fargo classifies all HMCs as "exempt" from the overtime requirements of the

8   FLSA, and no records are kept of the amount of hours HMCs work.  Cahalan Dep. at 57:22–58:13,

9   90:9–11; Blackwell Dep. at 86:12–20.  Plaintiffs claim that HMCs commonly work more than forty

10  hours per week without additional overtime compensation.  Ashworth Dec. ¶¶ 7–11; Dees Dec. ¶¶

11  6–8, 10–11; Duncan Dec. ¶¶ 7–11; Fitzgerald Dec. ¶¶ 7–11; Grabow Dec. ¶¶ 7–11; Hardy Dec. ¶¶

12  7–11; Hayes Dec. ¶¶ 7–11; Lee Dec. ¶¶ 7–11; Lovrien Dec. ¶¶ 7–11; Lunde Dec. ¶¶ 7–11; Madsen

13  Dec. ¶¶ 7–11; Magott Dec. ¶¶ 7–11; Pejoves Dec. ¶¶ 7–11; Sykes Dec. ¶¶ 7–11; Tugel Dec. ¶¶

14  7–11; Valdez Dec. ¶¶ 7–11.

15       In response to plaintiffs' seventeen HMC declarations, defendant has submitted sixty-seven

16  declarations from other HMCs purporting to show a wide variety in employment experiences.

17  Among defendant's declarants, the time spent working outside a Wells Fargo office ranges from

18  5–10% to nearly 100% of total time worked, depending upon a variety of factors related to each

19  individual HMC.  Carrello Dec. ¶ 3; Chatraw Dec. ¶ 3; Hailey Dec. ¶ 9; Lesch Dec. ¶ 3; Maggio

20  Dec. ¶ 4; Meirick Dec. ¶ 4; Pareigis Dec. ¶ 4; Ponzo Dec. ¶ 3; Reynolds Dec. ¶ 5; Schroeder Dec. ¶

21  3; Sierra Dec. ¶ 3; Skalicky Dec. ¶ 5; Smith Dec. ¶ 3.  A similar range appears regarding the

22  frequency with which HMCs are able to meet with their clients in person, and the amount of time

23  spent meeting with clients.  Drover Dec. ¶ 9; Elliott Dec. ¶ 7; Gallet Dec. ¶ 5; George Dec. ¶ 6;

24  Horton Dec. ¶ 5; Hanson Dec. ¶ 3; Lopez Dec. ¶ 4; Muir Dec. ¶ 6; Reynolds Dec. ¶ 3; Shaffer Dec. ¶

25  5. Additionally, defendant disputes plaintiffs' claim that HMCs spend a considerable amount of

26  time on clerical tasks, asserting that HMCs who handle a high volume of loans have clerical

27  assistants and that any office tasks performed by HMCs are performed directly in connection with

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

loan originations.  Bennett Dec. ¶ 4; Boyd Dec. ¶ 6; Chatraw Dec. ¶ 11; Clark Dec. ¶ 4; Cook Dec. ¶ 4; Corey Dec. ¶ 10; Gerhardt Dec. ¶ 17; Hanson Dec. ¶ 10; Nunez Dec. ¶ 4; Roppa Dec. ¶ 11; Sprague Dec. ¶ 4; Steiger Dec. ¶ 2; Westman Dec. ¶ 13; Zeller Dec. ¶ 4.  In terms of total hours worked, defendant's declarations show a range of thirty to sixty-five hours per week, in contrast to plaintiffs' assertion that HMCs commonly work more than forty hours per week.  Redfern Dec. ¶ 10; Scripter Dec. ¶ 9; O'Brien Dec. ¶ 12; Person Dec. ¶ 13; Smith Dec. ¶ 3.  As with the California HMCs, defendant asserts that these variations in job experiences arise from the varying product specializations among nationwide HMCs.  Blackwell Dec. ¶¶ 4–15.  Additional factors affecting work experience include geographic location, work style preferences, compensation objectives, experience, target market and market forces.

Defendant also attacks the reliability of plaintiffs' declarations on a number of grounds. First, defendant cites the similarities and uniformity in the language among the seventeen declarations, suggesting that they are "cookie-cutter" declarations that do not reveal the true experiences of the purported declarants.  Second, defendant asserts that nearly all of the declarations come from two offices in the Midwest, and therefore do not represent the 1,600 nationwide offices. Defendant additionally asserts that the declarants lack foundation to opine on the job duties of loan originators other than themselves.  Finally, defendant notes that six of the seventeen declarants worked most or all of their time in a refinance center in Des Moines that was established to take advantage of a temporary refinance market, and therefore plaintiffs' declarations are not representative of Midwest HMCs either.

Defendant further claims that current HMCs prefer their current commission-based compensation system, regardless of specialization, and therefore would not benefit from a class action.  Ford Dec. ¶ 4.  In response to this, plaintiffs assert that the aim of this litigation is not to do away with Wells Fargo's current commission system, but only to bring the commission system in line with the requirements of the FLSA by establishing record-keeping practices and overtime compensation.

Additionally, plaintiffs attack the reliability of defendant's declarations, claiming that

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1    declarations from current employees of a defendant are inherently unreliable and possibly coerced.

2    In a previous order in this litigation, this court noted the "heightened potential for coercion because

3    where the absent class member and the defendant are involved in an ongoing business relationship,

4    such as employer-employee, any communications are more likely to be coercive." Mevorah v.

5    Wells Fargo Home Mortg., Inc., No. C 05-1175 MHP, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005)

6    (Patel, J.) (quoting Belt v. Emcare Inc., 299 F. Supp. 2d 664, 668 (E.D. Tex. 2003)).

7         Reviewing the declarations as a whole, there are glaring reliability concerns on both sides.

8    Plaintiffs' declarations represent a very small portion of the full range of HMCs and Wells Fargo

9    locations, and are nearly identical in terms of language and substance.  Defendant's declarations,

10   though drawn from a wider sample of Wells Fargo employees and offices, are likewise selectively

11   presented and carry within them possible pressure arising from ongoing employment relationships.

12   It is unremarkable to conclude that both sets of declarations are litigation-driven, and drafted and

13   selected to advance a preferred characterization of the facts.  All declarations have therefore been

14   carefully scrutinized.

15        Even taking these credibility concerns into consideration, however, certain key undisputed

16   and undeniable facts arise.  First, it is clear that, from Wells Fargo's perspective, all HMCs are

17   treated exactly the same way in terms of exemption status and compensation.  Additionally, the

18   basic function and job description of each HMC is substantively identical—each HMC is charged

19   with selling home mortgages to consumers, with certain differences arising based on the target

20   customer base.  Thus, from the perspective of Wells Fargo, there are substantial similarities in the

21   manner in which HMCs are treated, and the manner in which their duties are designated.

22        From the perspective of individual HMCs, however, there are differences in day-to-day

23   activities and overall employment experiences that cannot be ignored.  Within the basic HMC

24   framework, HMCs are given a great deal of flexibility and autonomy in terms of work style and the

25   amount of time they spend working.  Though selectively chosen, defendants' declarations indicate a

26   certain degree of variability from one HMC to the next that the court must take into account when

27   determining whether class certification or collective action certification is appropriate.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1  LEGAL STANDARD

2  I.      Motion for Class Certification

3          A party seeking to certify a class must satisfy the four prerequisites enumerated in Rule

4  23(a), as well as at least one of the requirements of Rule 23(b).  Under Rule 23(a), the party seeking

5  class certification must establish: (1) that the class is so large that joinder of all members is

6  impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to

7  the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e.,

8  typicality); and (4) that the class representatives will fairly and adequately protect the interests of

9  other members of the class (i.e., adequacy of representation). Fed. R. Civ. P. 23(a).  In addition to

10 satisfying these prerequisites, parties seeking class certification must show that the action is

11 maintainable under Rule 23(b)(1), (2) or (3).  See Rule 23(b); Amchem Products, Inc. v. Windsor,

12 521 U.S. 591, 614 (1997).  Rule 23(b)(3) permits class actions for declaratory or injunctive relief

13 where "the court finds that the questions of law or fact common to the members of the class

14 predominate over any questions affecting only individual members, and that a class action is

15 superior to other available methods for the fair and efficient adjudication of the controversy."

16         The party seeking class certification bears the burden of establishing that the requirements of

17 Rules 23(a) and 23(b) have been met.  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180,

18 1188 (9th Cir.  2001), amended by 273 F.3d 1266 (9th Cir. 2001); Hanon v. Dataproducts Corp., 976

19 F.2d 497, 508 (9th Cir. 1992).  However, in adjudicating a motion for class certification, the court

20 accepts the allegations in the complaint as true so long as those allegations are sufficiently specific

21 to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied.

22 See Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).   The merits of the class members'

23 substantive claims are generally irrelevant to this inquiry.  Eisen v. Carlisle & Jacquelin, 417 U.S.

24 156, 177–78 (1974); Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).

25 However, courts are "at liberty to consider evidence which goes to the requirements of Rule 23 even

26 though the evidence may also relate to the underlying merits of the case," and a court may only

27 certify a class after a "rigorous analysis" as to whether the requirements have been satisfied.  Hanon,

28

UNITED STATES DISTRICT COURT
For the Northern District of California

976 F.2d at 509 (internal quotations omitted).

II.      Motion for Certification of Collective Action

Employees may bring a collective action under the FLSA on behalf of similarly situated employees.  29 U.S.C. § 216(b); see also Leuthold v. Destination America, Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004) (Walker, J.).  The court "may authorize the named FLSA plaintiffs to send notice to all potential plaintiffs and may set a deadline for those potential plaintiffs to join the suit."  Id.; see also Hoffmann-La Roche v. Sperling, 493 U.S. 165 (1989).  Potential plaintiffs may file a written consent with the court to opt in to the suit.  29 U.S.C. § 216(b).  Potential plaintiffs who do not opt in are not bound by the judgment and may bring a subsequent private action.  Leuthold, 224 F.R.D. at 466 (citing EEOC v. Pan Am. World Airways, Inc., 897 F.2d 1499, 1508 n.11 (9th Cir. 1990)).

DISCUSSION

I.     Rule 23 Class Certification

Plaintiffs seek to certify the following class: "all persons who worked as Home Mortgage Consultants outside the state of California for Wells Fargo Bank, N.A. at any time between July 1, 2001 and the present."  Plaintiffs bear the burden of showing that the proposed class satisfies all of the requirements of Rule 23(a) and at least one requirement of Rule 23(b).

A.      Rule 23(a) Requirements

A party seeking class certification must establish that the numerosity, commonality, typicality and adequacy of representation requirements of Rule 23(a) have been met.  The court addresses each of these requirements below.

1.     Numerosity

Pursuant to Rule 23, the class must be "so numerous that joinder of all members is

7

UNITED STATES DISTRICT COURT
For the Northern District of California

1   impracticable." Fed. R. Civ. P. 23(a)(1).  Defendant acknowledges that the purported class includes

2   approximately 15,000 persons.  Accordingly, plaintiffs have satisfied the numerosity requirement.

4               2.    Commonality

5       To fulfill the commonality prerequisite of Rule 23(a)(2), plaintiff must establish that there

6   are questions of law or fact common to the class as a whole.  Rule 23(a)(2) does not mandate that

7   each member of the class be identically situated, but only that there be substantial questions of law

8   or fact common to all.  See Harris v. Palm Spring Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir.

9   1964).  Individual variation among plaintiffs' questions of law and fact does not defeat underlying

10  legal commonality, because "the existence of shared legal issues with divergent factual predicates is

11  sufficient" to satisfy Rule 23.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

12      Plaintiffs identify at least four common questions: (1) whether HMCs were properly

13  classified as "exempt" from federal overtime and time-recording statutes; (2) whether Wells Fargo's

14  conduct emanated from California, and thus whether the UCL may be appropriately applied to the

15  class of nationwide plaintiffs; (3) whether Wells Fargo willfully failed to comply with the FLSA;

16  and (4) whether Wells Fargo acted in good faith in classifying HMCs as exempt.  Plaintiffs

17  additionally claim that the affirmative defenses raised by defendant—exemption pursuant to the

18  "outside sales" exemption and exemption pursuant to the administrative exemption—involve the

19  common factual question of the HMCs' primary duty.  The administrative exemption defense further

20  raises the common question of whether HMCs are paid a salary pursuant to 29 C.F.R. section

21  541.200(a)(1).  The outside sales exemption likewise raises the common factual issue of how certain

22  kinds of work are classified, for example, whether interacting with real estate agents and title

23  company employees outside the office constitutes sales activity.

24      Defendant argues that plaintiffs lack the requisite commonality due to the assertedly

25  individualized and factual nature of the inquiries regarding the experience of each particular HMC.

26  Apart from this general assertion, defendant largely conflates the commonality inquiry with the more

27  exacting predominance inquiry under Rule 23(b)(3).  Accordingly, the court will discuss these issues

28

8

UNITED STATES DISTRICT COURT
For the Northern District of California

1    in conjunction with the Rule 23(b)(3) analysis below.

2

3                    3.        Typicality

4        Under Rule 23(a)(3), the claims of the representative plaintiff must be typical of the claims

5    of the class.  To be considered typical for purposes of class certification, the named plaintiff need

6    not have suffered an identical wrong.  See Hanlon, 150 F.3d at 1020.  Rather, the claims of the

7    putative class must be "fairly encompassed by the named plaintiff's claims."  General Tel. Co. of the

8    Southwest v. Falcon, 457 U.S. 147, 156 (1982) (internal quotation omitted).

9        Regarding typicality, named plaintiffs Perez and Perry both purportedly had the same job,

10   same job duties, and were subject to the same company practices, policies and decisions that

11   affected their ability to earn overtime wages.  Defendants argue that plaintiffs have presented

12   insufficient facts to establish that they adequately represent the 15,000 HMCs from the 1,600 Wells

13   Fargo locations at issue in the nationwide class.  Paul v. WinCo Foods, Inc., No. CV 02-381-S-EJL,

14   2007 WL 1381794, at *4 (D. Idaho Feb. 16, 2007) (finding no typicality where the named plaintiffs

15   "represented only one of the eight Idaho stores and only two the eighteen California locations"

16   and had made only conclusory factual arguments in favor of typicality).  Although "[t]he hurdle

17   imposed by the typicality requirement is not great," named plaintiffs must show more than common

18   issues among themselves and the absent classmembers.  Palmer v. Stassinos, 233 F.R.D. 546, 550

19   (N.D. Cal. 2006) (Whyte, J.).

20       Defendants additionally cite testimony from the named plaintiffs indicating their lack of

21   knowledge about the practices of other HMCs.  Perez testified that he did not observe the comings

22   and goings of the prime HMCs in his office, and never visited any other Wells Fargo office.  Perez

23   Dep. at 62:7–10, 64:18–65:8.  Perry testified that he did not know what the other HMCs in his office

24   were doing based on the independent nature of each HMC's business practice.  Perry Dep. at

25   54:1–14.

26       In sum, the named plaintiffs are typical of the absent classmembers to the extent that they are

27   subject to the uniform compensation and employment policies that Wells Fargo applies to all HMCs.

28

9

However, they have not shown that they are typical to the extent that such typicality depends on substantial similarities in day-to-day activities.  In light of the fact that plaintiffs are challenging a company-wide policy, however, the fact that the named plaintiffs and the absent class members shared the same job title and were subject to the same policies at issue satisfies the typicality requirement.

3.    <u>Adequacy</u>

Rule 23(a)(4) dictates that the representative plaintiff must fairly and adequately protect the interests of the class. To satisfy constitutional due process concerns, unnamed class members must be afforded adequate representation before entry of a judgment which binds them.  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1020 (citing <u>Hansberry v. Lee</u>, 311 U.S. 32, 42–43 (1940)).  "Adequate representation 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'"  <u>Crawford v. Honig</u>, 37 F.3d 485, 487 (9th Cir. 1994) (quoting <u>Brown v. Ticor Title Ins. Co.</u>, 982 F.2d 386, 390 (9th Cir. 1992)).

Plaintiffs assert that the named plaintiffs have no known conflicts with members of the class of HMCs and will fairly and adequately protect the interests of the class.  Plaintiffs further claim that their counsel is sufficiently experienced in class and collective actions nationwide regarding wage and hour disputes to provide adequate legal representation to the class.

In response, defendant claims that the nationwide plaintiffs are inadequate representatives because, as former employees, their interests are antagonistic to those of current HMCs.  <u>See</u> <u>Southern Snack Foods, Inc. v. J & J Snack Foods Corp.</u>, 79 F.R.D. 678, 680 (D.N.J. 1978); <u>Van Allen v. Circle K Corp.</u>, 58 F.R.D. 562, 564 (C.D. Cal. 1972); <u>Matarazzo v. Friendly Ice Cream Corp.</u>, 62 F.R.D. 65, 68 (E.D.N.Y. 1974).  Defendant has cited declarations from several non-California HMCs stating that they prefer the commission-based system due to increased flexibility, control over individual work responsibilities, and the direct correlation between amount of work and compensation level.  Allison Dec. ¶ 11; Bennet Dec. ¶ 12; Hailey Dec. ¶ 11; House Dec. ¶ 12; Logan

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

Dec. ¶ 9; Ugan Dec. ¶ 14.  As noted above, plaintiffs strenuously deny that the end result of a successful class action lawsuit will be to eliminate Wells Fargo's commission-based compensation structure, and therefore assert that these objections are irrelevant.

While courts have held that a former employee may not represent the best interests of current employees where the relief sought may strain the employment relationship between current employees and a defendant employer, defendant has identified no authority stating that former employees are inadequate *per se*.  Although the named plaintiffs in this action are primarily concerned with a maximum financial recovery, a determination that current and former employees are entitled to overtime compensation would likely lead to changes within Wells Fargo that would benefit current employees going forward.  In other words, defendants have not shown that current employees would be harmed by a successful class action.  Accordingly, the named plaintiffs satisfy the adequacy requirement of Rule 23(a).

### B.  Rule 23(b)(3) Requirements

Class certification pursuant to Rule 23(b)(3) requires the plaintiff to establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  The court will address each of these two requirements separately.

### 1.  Predominance

The predominance inquiry "focuses on the relationship between the common and individual issues."  Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001).  Consequently, the presence of common issues of fact or law sufficient to satisfy the requirements of Rule 23(a)(2) is not by itself sufficient to show that those common issues predominate.  Hanlon, 150 F.3d at 1022.  Nonetheless, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a

1    single adjudication, there is clear justification for handling the dispute on a representative rather than

2    on an individual basis." Id. (internal quotations omitted); see also Culinary/Bartender Trust Fund,

3    244 F.3d at 1162.  To establish predominance of common issues, a party seeking class certification

4    is not required to show that the legal and factual issues raised by the claims of each class member

5    are identical.  Rather, the predominance inquiry focuses on whether the proposed class is

6    "sufficiently cohesive to warrant adjudication by representation."  Culinary/Bartender Trust Fund,

7    244 F.3d at 1162 (quoting Amchem, 521 U.S. at 623).  Among the considerations that are central to

8    this inquiry is "the notion that the adjudication of common issues will help achieve judicial

9    economy." Zinser, 253 F.3d at 1189 (quoting Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234

10   (9th Cir. 1996)).

11          Plaintiffs assert that the two main questions in this litigation are common to the class.  It is

12   clear that the question of whether Wells Fargo's conduct regarding exemption classifications

13   emanated from California is a common question, focusing only on the practices of a handful of

14   individuals within the company.  However, plaintiffs further claim that the question of whether

15   HMCs are properly classified as exempt is common as well.  Plaintiffs' main point in support of this

16   contention is the fact that Wells Fargo uniformly treats all HMCs as exempt, regardless of any

17   purported variations in duties or work activities.  Defendant does not deny that its HMC

18   compensation policy is uniform for all HMCs, and has confirmed that it does not maintain records of

19   hours worked by HMCs.

20          In the context of overtime pay litigation, courts have often found that common issues

21   predominate where an employer treats the putatuve classmembers uniformly with respect to

22   compensation, even where the party opposing class certification presents evidence of individualized

23   variations.  For example, in Wang v. Chinese Daily News, 231 F.R.D. 602, 613 (C.D. Cal. 2005), the

24   court held that the defendant "cannot, on the one hand, argue that all [putative classmembers] are

25   exempt from overtime wages and, on the other hand, argue that the Court must inquire into the job

26   duties of each [putative classmember] in order to determine whether that individual is 'exempt.'"

27   Two recent decisions from this district are in accord.  In Tierno v. Rite Aid Corp., No. C 05-02520

28

12

THE, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) (Henderson, J.), an overtime class action brought by store managers at Rite Aid, the court held that, given the fact that Rite Aid had historically "treated all Store Managers as a homogenous group for the purposes of" the applicable labor laws and "always categorically classified all Store Managers as exempt employees without exception . . . Rite-Aid's [sic] contention that each Store Manager position must now be individually assessed to determine whether the position can be categorized as exempt or non-exempt rings hollow."  Similarly, in Krzesniak v. Cendant Corp., No. C 05-05156 MEJ, 2007 WL 1795703 (N.D. Cal. June 20, 2007) (Jenkins, J.), another manager overtime case, the court held that where a putative class action plaintiff challenges a policy of classifying all employees of a given title as exempt, the defendant cannot then argue that individualized inquiries into the job duties of each employee are necessary to determine whether each employee is exempt.

It is undisputed that Wells Fargo's compensation and exemption policy is uniform among all HMCs.  Plaintiffs have submitted evidence of other uniform polices regarding HMCs, such as training, recruiting and job descriptions.  Accordingly, plaintiffs have made a strong showing that, as a general matter, common questions related to HMC experiences predominate over individual variations.  However, courts have recognized that the application of certain specific statutory exemptions requires a highly individualized inquiry, and have resisted class certification on that basis.  See, e.g., Perry v. U.S. Bank, No. C-00-1799-PJH, 2001 WL 34920473 (N.D. Cal. Oct. 16, 2001) (Hamilton, J.).  In Perry, the court denied certification of a class of personal bankers seeking overtime compensation, based on the individual nature of the exemptions.  Accordingly, the court will consider the specific exemptions identified by defendant in order to determine whether these exemptions raise predominant individual factual and legal issues.

### 2.   Exemptions

Defendant identifies four federal exemptions in its opposition brief: (1) the outside sales exemption, (2) the commissioned sales exemption, (3) the administrative exemption, and (4) the highly paid exemption.  The court will consider each exemption in turn.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

a.    <u>Outside Sales Exemption</u>

Under federal law, employees classified as "outside salespersons" are exempt from overtime requirements.  29 U.S.C. § 213(a)(1).  An "outside salesman" is defined as an employee whose primary duty is "(I) making sales . . ., or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."  29 C.F.R. 541.500(a).  Additionally, "work performed incidental to and in conjunction with the employee's own outside sales or solicitations . . . shall be regarded as exempt outside sales work."  29 C.F.R. § 541.500(b).  The United States Department of Labor has stated that the outside sales exemption may apply to "employees of finance companies who obtain and solicit mortgages."  Porter Dec., Exh. C.

Courts have acknowledged that "where liability to each plaintiff will depend on whether that plaintiff was correctly classified as an 'outside salesman,' the Court will be required to make a fact-intensive inquiry into each potential plaintiff's employment situation" and that class certification may therefore be inappropriate.  <u>Clausman v. Nortel Networks, Inc.</u>, No. IP 02-0400-C-M/S, 2003 WL 21314065, at *4 (S.D. Ill. May 1, 2003).  Defendant's declarations suggest a wide variation among HMCs in terms of the amount of time spent on outside sales activities, depending on personal preference, experience, efficiency and reliance on support staff.

b.    <u>Commissioned Sales Exemption</u>[2]

Federal law provides an exemption for any employee of a "retail or service establishment" where the employee's regular pay rate exceeds one and one half times the minimum wage and "more than half his compensation for a representative period (not less than one month) represents commissions on goods or services."  29 U.S.C. § 207(I).  It is unclear whether Wells Fargo would qualify as a "retail or service establishment" for the purposes of this exemption.  <u>See</u> <u>Barnett v. Wa. Mut. Bank, FA</u>, No. C 03-00753 CRB, 2004 WL 1753400, at *6 (N.D. Cal. Aug. 5, 2004) (Breyer,

1   J.) (holding that credit companies are not "retail or service establishments"); <u>Gatto</u>, 442 F. Supp. 2d

2   at 541–42 (holding that a mortgage broker fit within the definition); <u>see also</u> <u>Martin v.</u>

3   <u>Refridgeration School, Inc.</u>, 968 F.2d 3, 5 (9th Cir. 1992) ("The meaning of the term 'retail

4   establishment' is not obvious without further definition, and the statutory definition is of little

5   assistance.").  In any case, the question of whether Wells Fargo is a "retail or service establishment"

6   is common to the entire class and does not defeat class certification.

7       As with the outside sales exemption, a determination of liability pursuant to the

8   commissioned sales exemption will require an individualized inquiry as to the amount and break-

9   down of each class member's compensation, as well as the amount of time worked by each HMC.

10

11                         c.        <u>Administrative Exemption</u>

12      The FLSA additionally exempts employees employed in an administrative capacity from

13   overtime requirements.  29 U.S.C. § 213(a).  An administrative employee is defined as any

14   employee

15       "(1) Compensated on a salary or fee basis at a rate of not less than
     $455 per week (or $380 per week, if employed in American Samoa by
16   employers other than the Federal Government), exclusive of board,
     lodging or other facilities; (2) Whose primary duty is the performance
17   of office or non-manual work directly related to the management or
     general business operations of the employer or the employer's
18   customers; and (3) Whose primary duty includes the exercise of
     discretion and independent judgment with respect to matters of
19   significance."

20   29 C.F.R. § 541.200.  The Department of Labor has stated that employees who service their

21   employer's financial services business by marketing, servicing and promoting financial products,

22   advising customers and recommending products may fall within this exemption.  Porter Dec., Exh.

23   D.  "However, an employee whose primary duty is *selling* financial products does not qualify for the

24   administrative exemption."  29 C.F.R. § 541.203 (emphasis added).  In light of this authority,

25   plaintiff has made a strong showing that the administrative exemption may be categorically

26   inapplicable and therefore resolved on a class-wide basis.  This favors class certification.

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

d.      Highly Paid Exemption

As a final exemption, Wells Fargo claims that the HMCs are exempt under the federal statute exempting highly compensated employees from overtime laws.  Under federal law, "An employee with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee identified in subparts B, C or D of this part."  29 C.F.R. 541.601.  This, again, will involve an individualized analysis not only of job duties but of the dollar amount of each HMC's compensation.

3.      Conclusion as to Predominance

Taken together, defendants' declarations have raised serious issues regarding individual variations among HMC job duties and experiences.  However, the common factual and legal issues nonetheless predominate.  Wells Fargo's uniform policies regarding HMCs weighs heavily in favor of class certification.  As numerous courts have recognized, it is manifestly disingenuous for a company to treat a class of employees as a homogenous group for the purposes of internal policies and compensation, and then assert that the same group is too diverse for class treatment in overtime litigation.  This is particularly true in a situation such as this, where the difficulty of proving hours worked and compensation received is exacerbated by defendant's complete failure to maintain pertinent records.  Accordingly, plaintiffs have satisfied their burden and demonstrated that common issues predominate.

4.      Superiority

The final prerequisite for certification of a class under Rule 23(b)(3) requires the plaintiff to show that a class action is superior to other methods available for the adjudication of the parties' dispute. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."  Valentino, 97 F.3d at 1234.  In considering whether a class action is superior, the court must focus on whether the

16

UNITED STATES DISTRICT COURT
For the Northern District of California

1  interests of "efficiency and economy" would be advanced by class treatment.  Zinser, 253 F.3d at

2  1189 (internal quotations omitted).  Relevant factors include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

7  Fed. R. Civ. P. 23(b)(3).

### a.     Case Management

10       Plaintiffs contend that a class action would be superior to individual actions because

11  representative litigation is particularly useful in suits by employees against an employer, and

12  because the various actions that have been previously filed against Wells Fargo regarding HMC

13  overtime compensation have already been consolidated as an MDL action.  Defendant claims that

14  the myriad factual issues pertaining to each of the HMCs at each of the numerous Wells Fargo

15  locations throughout the country would make class action case management impracticable and

16  therefore inferior.  Defendant further claims that it would be denied due process if the court made

17  determinations regarding a small number of HMCs and then extrapolated those results to the

18  thousands of class members, in light of the individualized analysis required before liability may be

19  determined.  Additionally, defendant asserts that the "level of discord" among the putative class

20  members militates against certification.  Plaintiffs were also given the names and contact

21  information of 500 putative class members, and have submitted only seventeen declarations in

22  support of their motion.  Furthermore, at least one plaintiff is pursuing an FLSA claim individually.

23  Supp. Porter Dec., Exh. 4.  Finally, at least some HMCs are content with the present arrangement

24  and would not support a lawsuit geared at altering Wells Fargo's HMC compensation system.

25  However, plaintiffs insist that the current compensation arrangement would not be unduly disturbed

26  by a successful outcome for the plaintiffs, and this purported "discord" is therefore overstated.

27       As discussed above, many of the issues in this litigation focus on Wells Fargo's policies and

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

practices, including whether any improper classifications were made willfully.  Because individual classmembers have little bearing on these issues, efficiency would be better served by trying these issues on a class-wide basis.  Furthermore, although many of the purported exemptions involve individual factual inquiries, plaintiffs have raised categorical challenges to the application of these exemptions which may be resolved on a class-wide basis.  In light of the predominance of these common issues over any individualized factual issues, considerations of case management favor class treatment.

b.    Alternative Remedies

Plaintiffs additionally claim that the existence of parallel "opt-in" claims under the FLSA do not alter the desirability of class treatment for the UCL claims, as courts often certify concurrent FLSA collective actions and UCL class actions at the same time.  See, e.g., Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 491 (E.D. Cal. 2006).  Plaintiffs acknowledge, however, that courts are hesitant to certify concurrent actions in this manner where there is substantial opposition among potential class members to class treatment.  Leuthold, 224 F.R.D. at 469–70.  Although defendant's declarants have stated that they prefer a commission-based compensation system, defendant has not shown that a successful class action would necessarily prevent commission-based compensation, and therefore has not shown substantial opposition among potential class members.

Defendant claims that pendent state law claims, to the extent they are present in this action, can be litigated as a separate FLSA opt-in action, and therefore class certification of the UCL claim is unnecessary.  See id..  Defendant further claims that the individual potential recoveries are sufficiently large that HMCs would pursue individual claims if desired.

While the existence of alternative remedies is a factor weighing against class certification, the substantial predominance of common issues coupled with case management techniques tip the balance in favor of class treatment.  Plaintiffs have therefore shown that a class action is a superior means of resolving this dispute.

C.    Alternative Rule 23 Arguments

In the alternative to a Rule 23(b)(3) action, plaintiffs seek certification pursuant to Rule 23(b)(2) or Rule 23(c)(4)(A).

1.    Rule 23(b)(2)

A party seeking certification of a class under Rule 23(b)(2) also bears the burden of establishing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making" injunctive relief appropriate. Fed. R. Civ. P. 23(b)(2). Class actions certified under Rule 23(b)(2) are "not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages" where the claim for injunctive relief is the primary claim. Probe v. State Teachers' Ret. Sys., 780 F.2d 776, 780 (9th Cir. 1986). Rule 23(b)(2) certification of a class seeking both injunctive relief and damages is proper only where the claim for injunctive relief is the predominant form of relief sought by the class. See Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439, 450–51 (N.D. Cal. 1994) (Henderson, J.).

Plaintiff asserts that this action is suitable for Rule 23(b)(2) certification because a ruling that defendants have improperly classified HMCs as exempt would amount to an injunction forcing Wells Fargo to change its policies and practices, and that Wells Fargo could not continue to classify its HMCs as exempt after such a contrary ruling.

In the employment context, courts routinely deny class certification under Rule 23(b)(2) where the named plaintiffs are former employees and therefore will not benefit from any injunctive relief. See, e.g., Jimenez v. Domino's Pizza, Inc., 238 F.R.D. 241, 250 (C.D. Cal. 2006) (holding that claims for monetary relief predominated where plaintiffs were "former employees and thus an injunction as to Domino's behavior to current employees cannot be Plaintiffs' primary concern"); Lanzarone v. Guardsmark Holdings, Inc., No. CV06-1136 RPLAX, 2006 WL 4393465, at *3 (C.D. Cal. 2006) (holding that "certification cannot be granted under Rule 23(b)(2) because Plaintiff, a former employee, lacks standing to pursue injunctive relief"); Sepulveda v. Wal-Mart Stores, Inc.,

19

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

237 F.R.D. 229, 245 (C.D. Cal. 2006) (holding that certification under Rule 23(b)(2) was not available where approximately 1,200 out of roughly 2,750 class members, as well as the named plaintiff, were former employees who would "derive no benefit from the injunction"). Here, plaintiff is a former employee, and the proposed class definition explicitly envisions a certain proportion of former employees. Accordingly, the predominant claims in this action are monetary, and certification under Rule 23(b)(2) is not available.

2.    <u>Rule 23(c)(4)(A)</u>

Rule 23(c)(4)(A) provides that, where appropriate, "an action may be brought or maintained as a class action with respect to particular issues." "The question of whether partial certification is appropriate under Rule 23(c)(4)(A) is closely linked to the question of whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy." <u>Sepulveda</u>, 237 F.R.D. at 250 (internal quotations omitted). Plaintiffs assert that, if class certification is unavailable under Rule 23(b)(2) or 23(b)(3), the court may certify a class for the purpose of resolving any class-wide issues. Because the court has found that common issues predominate over individual issues for the purposes of Rule 23(b)(3), certification under Rule 23(c)(4)(A) is inappropriate.

II.    <u>FLSA Collective Action</u>

In addition to certification of a Rule 23 class, plaintiffs request a conditional certification of the action as a representative collective action. Plaintiffs propose to bring a collective action on behalf of "All persons who worked as Home Mortgage Consultants outside the state of California for Wells Fargo Bank, N.A. at any time between February 17, 2003 and the present."

The court's determination of whether a collective action is appropriate is discretionary. <u>Leuthold</u>, 224 F.R.D. at 466; <u>see also</u> <u>Lusardi v. Lechner</u>, 855 F.2d 1062, 1074–75 (3rd Cir. 1988). Plaintiffs bear the burden of showing that they and the proposed class are similarly situated for purposes of section 216(b). 29 U.S.C. § 216(b); <u>see also</u> <u>Romero</u>, 235 F.R.D. at 481. The term

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    "similarly situated" is not defined under the FLSA and the Ninth Circuit has yet to address the issue.

2    Id.  District courts have taken three different approaches in interpreting the term "similarly situated"

3    for purposes of section 216(b): "(1) a two-tiered case-by-case approach, (2) the incorporation of the

4    requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of

5    the requirements of the pre-1966 version of Rule 23 for 'spurious' class actions."  Id.  This court

6    will follow the first approach adopted by the majority of courts, including three circuit courts.

7    Leuthold, 224 F.R.D. at 467; see, e.g., Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102-03

8    (10th Cir. 2001).[3]

9        The first step under the two-tiered approach considers whether the proposed class should be

10    given notice of the action.  Leuthold, 224 F.R.D. at 467.  This decision is based on the pleadings and

11    affidavits submitted by the parties.  Id.  The court makes this determination under a fairly lenient

12    standard due to the limited amount of evidence before it.  Id.  The usual result is conditional class

13    certification.  Id.  In the second step, the party opposing the certification may move to decertify the

14    class once discovery is complete and the case is ready to be tried.  Id.  If the court finds that the

15    plaintiffs are not similarly situated at that step, "the court may decertify the class and dismiss opt-in

16    plaintiffs without prejudice."  Id.  The court addresses the first tier in this order.

17        Courts have held that conditional certification requires only that "plaintiffs make substantial

18    allegations that the putative class members were subject to a single illegal policy, plan or decision."

19    Id. at 468; see also Sperling v. Hoffmann-La Roche, Inc., 118 F.R.D. 392, 406 (D.N.J. 1988).  Under

20    this lenient standard, "the plaintiffs must show that there is some factual basis beyond the mere

21    averments in their complaint for the class allegations."  West v. Border Foods, Inc., No. 05-2525,

22    2006 WL 1892527, at *2 (D. Minn. July 10, 2006).  Here, plaintiffs have shown that Wells Fargo's

23    policy and practice related to HMC compensation is uniform for all putative classmembers.

24    Plaintiffs have also submitted declarations indicating a significant degree of commonality among the

25    experiences of HMCs.  Although defendants raise substantial issues regarding the reliability of these

26    declarations, plaintiffs' factual showing satisfies the lenient standard warranting conditional

27    certification of this collective action.

28

III.    Concurrent Certification

        In the event that this court certifies a collective action pursuant to the FLSA, defendant asserts that the court should not certify a Rule 23 class action on that basis.  Courts are hesitant to certify concurrent actions where there is substantial opposition among potential class members to class treatment.  Leuthold, 224 F.R.D. at 469–70.  However, defendant has not shown substantial opposition to class treatment.  Accordingly, the court sees no reason not to certify both actions.

CONCLUSION

        For the foregoing reasons, plaintiffs' motion for class certification is GRANTED IN PART and DENIED IN PART.  Plaintiffs' motion to certify pursuant to Rule 23(b)(2) and Rule 23(c)(A)(4) is DENIED.  Plaintiffs' motion to certify pursuant to Rule 23(b)(3) is GRANTED.  Plaintiffs' motion to certify a collective action is GRANTED.

        Within thirty (30) days of the date of this order the parties shall submit a form or forms of class notice and other appropriate papers to facilitate this order.  The Clerk of Court shall set a further Case Management Conference within forty-five (45) days of this order.

Dated: October 17, 2007

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

ENDNOTES

1.  A putative class of California plaintiffs is being represented by a separate lead plaintiff and counsel, and has moved separately for class certification.  The putative class in the instant motion consists of plaintiffs from all states other than California, and will be referred to as "the nationwide plaintiffs."

2.  Defendant appears to raise this exemption in its opposition brief, but refers to it as the "inside sales exemption."  Defendant cites only one case in its cursory discussion of the "inside sales exemption," a case dealing with the commissioned sales exemption.  Gatto v. Specialists of Ill., Inc., 442 F. Supp. 2d 529 (N.D. Ill. 2006).  The court will assume that defendant is referring to the commissioned sales exemption.

3.  See also Hipp v. Liberty Nat. Life. Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001); Mooney v. Aramco Serv. Co., 54 F.3d 1207, 1213–14 (5th Cir. 1995).