UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | No. C 06-01770 MHP |
| WELLS FARGO HOME MORTGAGE OVERTIME PAY LITIGATION. | **MEMORANDUM & ORDER** |
| This Document Relates to ALL CASES. | **Re: Plaintiffs' Motion for Partial Summary Judgment as to FLSA Retail Sales Exemption Under 29 U.S.C. § 207(i)** |
| _____ / | |

    This multidistrict litigation arises from four separate actions: Mevorah v. Wells Fargo Home Mortgage, Inc., No. 05-1175 (N.D. Cal.), Perez v. Wells Fargo Mortgage Co., No. 05-2722 (N.D. Cal.), Perry v. Wells Fargo Home Mortgage, Inc., No. 05-890 (S.D. Ill.), and Miles v. Wells Fargo Home Mortgage, No. 06-1991 (N.D. Cal.). Among other claims, all four actions assert that defendant Wells Fargo Home Mortgage ("Wells Fargo") has failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. sections 201 *et seq.*

    The plaintiffs in each action are employed by defendant Wells Fargo as "home mortgage consultants" whose duties include selling loan products to the general public. Joint Statement of Undisputed Facts ¶ 7. It is undisputed that defendant Wells Fargo is a bank that operates as a "diversified financial services company, providing banking, insurance, investments, mortgage and consumer finance" throughout the United States. Id. ¶¶ 1, 5.

    Now before the court is plaintiffs' motion for partial summary judgment as to defendant's third affirmative defense, i.e. that plaintiffs are not entitled to overtime under the FLSA because they

1  fall within the exemption under 29 U.S.C. section 207(i). Having considered the parties' arguments
2  and submissions, and for the reasons stated below, the court hereby enters the following
3  memorandum and order.

5  LEGAL STANDARD

6  Summary judgment is proper when the pleadings, discovery and affidavits show that there is
7  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a
8  matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the
9  case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is
10 genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving
11 party. Id. The party moving for summary judgment bears the burden of identifying those portions
12 of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material
13 fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party
14 will have the burden of proof at trial, the moving party need only point out "that there is an absence
15 of evidence to support the nonmoving party's case." Id.

16 Once the moving party meets its initial burden, the nonmoving party must go beyond the
17 pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a
18 genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving
19 party's allegations. Id.; Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The
20 court may not make credibility determinations, and inferences to be drawn from the facts must be
21 viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker
22 Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249. The moving party may "move
23 with or without supporting affidavits for a summary judgment in the party's favor upon all or any
24 part thereof." Fed. R. Civ. P. 56(a). "Supporting and opposing affidavits shall be made on personal
25 knowledge, shall set forth such facts as would be admissible in evidence, and shall show
26 affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P.
27 56(e).

DISCUSSION

Under the FSLA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate no less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). The FLSA contains various exemptions from this requirement to pay overtime in excess of forty hours per week. One such exemption is given in 29 U.S.C. section 207(i), which states,

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods and services.

This exemption is alternatively referred to as the commissioned sales exemption, the retail sales exemption, and the inside sales exemption.

The only question before the court is whether plaintiffs are employees of, and whether defendant Wells Fargo is, a "retail or service establishment" as those terms are used in section 207(i). As will be seen below, the court answers this question in the negative. The court concludes that Wells Fargo is not a retail or service establishment, and therefore, plaintiffs do not fall within the section 207(i) exemption. The court GRANTS plaintiffs' motion for partial summary judgment and unless some other exemption applies[1], plaintiffs are entitled to overtime compensation as required under the FLSA.

The analysis underlying this conclusion begins with a history of amendments to the FLSA. At the time the FLSA was enacted in 1938 during the Great Depression, the statute contained an exemption for "any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce." P.L. 75–718, 52 Stat. 1060, § 13(a)(2). Section 13(a)(2) of the Act was codified in the code at 29 U.S.C. section 213(a)(2). The Act as originally passed used, but did not define the phrase "retail or service establishment."

Three years later in 1941, the Department of Labor issued an interpretative bulletin providing guidance on the scope and applicability of the section 213(a)(2) exemption. Interpretative Bulletin,

3

1  No. 6, revised and reissued June 16, 1941, 1942 WH Manual 326.  In its interpretative bulletin, the
2  Department of Labor took the position that, among other types of establishments, a variety of
3  financial institutions such as banks (both commercial and savings), personal loan companies, trust
4  companies, building and loan associations, and insurance companies were not within the scope of
5  the exemption for retail or service establishments.  Id. at 334–35, ¶¶ 29–31[2]; see also Mitchell v.
6  Kentucky Finance Co., Inc., 359 U.S. 290, 291–92 (1959).  The 1941 Department of Labor
7  interpretation that banks and personal loan companies are not retail or service establishments has
8  been retained in the modern regulations.  See 29 C.F.R. § 779.317 (enumerating a partial list of
9  establishments, including banks (both commercial and savings), finance companies, insurance
10 companies, and credit companies, including small loan and personal loan companies, to which the
11 retail concept does not apply).

12      In 1949, Congress amended section 13(a)(2) of the FLSA to add an express definition of the
13 term "retail or service establishment."  63 Stat. 910, 917, § 11.[3]  At the same time it made this
14 amendment to section 13(a)(2) of the Act, Congress also provided that pre-1949 rulings and
15 interpretations by the Department of Labor should remain in effect unless inconsistent with the
16 statute as amended or unless amended, modified, or rescinded by the Department of Labor in
17 accordance with the provisions of the Act.  Id. at 920, § 16(c).[4]  As mentioned previously, the
18 Department of Labor 1941 interpretation has been carried forward to the modern regulations, and
19 therefore, the Department itself has not made any modifications to its earlier interpretation.

20      In Mitchell, the Supreme Court concluded that the legislative history of the 1949 amendment
21 to section 13(a)(2) "demonstrate[d] beyond a doubt that Congress was acting in implementation of a
22 specific and particularized purpose."  Mitchell, 359 U.S. at 293.  This specific and limited purpose
23 was to "do away with" the Department of Labor's formulation of the "business use" test under
24 which a business enterprise would not qualify as a retail or service establishment unless a certain
25 percentage of its receipts were derived from sales to individual, private persons, as opposed to other
26 businesses.  Id. at 293–94 (citing Interpretative Bulletin, No. 6, revised and reissued June 16, 1941,
27 1942 WH Manual 326, ¶¶ 14, 18).
28

4

Other than this limited purpose to express its "dissatisf[action]" with the Department of Labor's "business use" test, the Supreme Court in <u>Mitchell</u> found nothing else in the legislative history to suggest that Congress intended to disturb any other Department interpretation. <u>Id.</u> To the contrary, the Supreme Court recognized that section 16(c) of the 1949 FLSA amendments explicitly stated Congress' intent to preserve existing Department of Labor rulings that were not inconsistent with the statute. <u>Id.</u> at 292; <u>see also</u> 63 Stat. 910, 920, § 16(c), *supra* n.4. Finding no such inconsistency, the Supreme Court concluded that the Department's previous opinion—that personal loan companies, banks, and other enterprises in the financial field do not fall within the exemption for "retail or service establishments"—remained in effect. <u>Id.</u> at 295. Lest there be any "residual doubt," the Court also cited House and Senate Reports stating explicitly that the 1949 amendment does not exempt, among other establishments, banks and credit companies. <u>Id.</u>

Unlike the exemption in section 213(a)(2) which was first enacted when the FLSA was initially passed in 1938, the exemption at issue in this case—the exemption now codified at 29 U.S.C. section 207(i)—was not enacted until 1961. P.L. 87–30, 75 Stat. 65, § 6(g).[5] Both sections 213(a)(2) and 207(i), however, use the identical phrase "retail or service establishment." In the 1961 legislative history, Congress referred to the definition of "retail or service establishment" in the already existing section 213(a)(2) when discussing the same term used in the newly added section 207(i). S.R. 145, 87th Cong., first session, p. 27–29; reprinted at 1961 U.S.C.C.A.N. 1620, 1646–49. Both the Eleventh Circuit and the Department of Labor have recognized that the legislative history of the 1961 amendments makes clear that Congress intended the existing definition in section 213(a)(2) to also apply to section 207(i). See <u>Reich v. Delcorp. Inc.</u>, 3 F.3d 1181, 1184 (11th Cir. 1993) ("Congress specified that the § 213(a)(2) definition of 'retail or service establishment' apply to § 207(i)") (citing 29 C.F.R. §§ 779.312, 779.411 (1992)); 29 C.F.R. § 779.312 (1992) ("[i]t is clear from the legislative history of the 1961 amendments to the Act that no different meaning was intended by the term 'retail or service establishment' from that already established by the Act's definition, wherever used in the new provisions") (citing S.R. 145, 87th Cong., first session, p. 27); <u>see also</u> 29 C.F.R. § 779.312 (2008) (same).

5

The final twist in the amendment history of the FLSA occurred in 1990 when Congress repealed section 213(a)(2), but left 207(i) in tact. P.L. 101-157, 103 Stat. 939, § 3(c)(1). The Eleventh Circuit in Reich addressed the effect of the repeal of section 213(a)(2) and concluded that the repeal did not change the meaning or construction of the phrase "retail or service establishment" as used in section 207(i). Reich, 3 F.3d at 1183. As discussed above, the court in Reich recognized that when section 207(i) was passed in 1961, Congress expressed clear intent that the term "retail or service establishment" was to have the same meaning in that section as it did in section 213(a)(2). Id. The Reich court reasoned,

> Thus, any construction of the terms as defined in § 213(a)(2) become a part of the definition of the term as found in § 207(i). Nothing in the 1990 amendments [repealing section 213(a)(2)] changed section 207(i). The term "retail or service establishment" still remains, and there is no expression of congressional intent that it should be construed any differently. Absent specific congressional intent, we will not conclude that Congress retained the term "retail or service establishment" in § 207(i) yet at the same time discarded thirty years of established meaning.

Id.

In the wake of the 1990 amendments, the Ninth Circuit continued to rely on 213(a)(2) to provide a statutory definition of the term "retail or service establishment," although the Ninth Circuit did not specifically discuss the 1990 amendments. Martin v. The Refrigeration School, Inc., 968 F.2d 3, 5 n.1 (9th Cir. 1992). Other district courts to consider the implications of the repeal of 213(a)(2) have followed the Eleventh and Ninth Circuits. See Gatto v. Mortgage Specialists of Illinois, Inc., 442 F. Supp. 2d 529, 538 n.8 (N.D. Ill. 2006) (collecting district court cases).

Having reviewed the history of FLSA amendments as it relates to (former) section 213(a)(2) and (still-existing) section 207(i), it is straight-forward to conclude that banks such as defendant Wells Fargo are not "retail or service establishments" as that phrase is used in section 207(i). The Supreme Court in Mitchell established that in amending the FLSA in 1949 to include an express definition of "retail or service establishment" in section 213(a)(2), Congress adopted the pre-1949 Department of Labor interpretations, provided that they were not inconsistent with the amendments. The Supreme Court found in Mitchell that nothing in the 1949 amendments was inconsistent with the pre-1949 Department interpretation that banks and other financial institutions were not retail or service establishments. Both the Eleventh Circuit in Reich and the Department of Labor in its

6

1 regulations have recognized that nothing in the 1961 amendments adding section 207(i) was
2 inconsistent with that interpretation. And finally, the Eleventh and Ninth Circuits have recognized
3 that nothing in the 1990 amendments removing section 213(a)(2) was inconsistent with that
4 interpretation. Accordingly, the pre-1949 Department of Labor interpretation that banks and other
5 financial institutions are not "retail or service establishments" still holds today.

6        The fact that "nothing has happened since the 1949 amendments" with respect to banks and
7 other financial institutions distinguishes this case from the case in Reich where something *had*
8 happened with respect to laundries. Reich, 3 F.3d at 1184. In Reich, the Department of Labor
9 argued that laundries were not retail or service establishments because when Congress passed the
10 1949 FLSA amendments, it included a specific exemption for laundries (in section 13(a)(3) of the
11 FLSA), and according to the legislative history, that exemption was necessary because there was "no
12 clear concept of laundries as retail." Id. The Secretary of Labor in Reich argued that given this
13 legislative history, a laundry could *never* qualify as a "retail or service establishment." Id. Citing
14 Mitchell, the Reich court stated that the "Supreme Court has recognized that in the legislative
15 history to the 1949 amendments, Congress excluded certain businesses from the scope of the 'retail
16 or service establishment' exemption." Id. "If nothing had happened since the 1949 amendments,"
17 the Eleventh Circuit in Reich stated that it "would be constrained to hold that laundries cannot
18 qualify as a 'retail or service establishment.'" Id. The Reich court went on to conclude that
19 something *had* happened, reasoning that post-1949 amendments evidenced Congressional intent to
20 allow laundries to qualify as retail or service establishments. Id. at 1184–86.

21        To be clear, banks such as Wells Fargo are not retail or service establishments within the
22 meaning of section 207(i) not because the *Department of Labor* has concluded that they are not, but
23 rather, because *Congress* has concluded that they are not. In a case factually similar to the one at
24 hand, another court in this district concluded that loan officers working at a call center selling home
25 mortgage loans over the telephone were not employees of a retail or service establishment under
26 section 207(i). Barnett v. Washington Mutual Bank, FA, 2004 WL 1753400 at *1, *6 (N.D. Cal.
27 Aug. 5, 2004) (Breyer, J.). The Barnett court stated,

28       The Supreme Court [in Mitchell] held that when Congress amended the FLSA it
        specifically adopted the Department of Labor's pre-1949 rulings as to what was a

7

> retail or service establishment. The Court's conclusion was reinforced by the legislative history which clearly evidenced a specific intent to exclude certain industries, including the credit industry [and the banking and finance industries], from the retail or service establishment exemption. Therefore, this Court is not deferring to the Department of Labor, but rather is following the dictates of Congress, the Supreme Court and the Ninth Circuit.

Id. at *6.

The conclusion in this case is not only in accord with Barnett, but is also in accord with Casas v. Conseco Finance Corp., 2002 WL 507059 at *3–5 (D. Minn. Mar. 31, 2002) (Tunheim, J.) (holding that employer who sold lending products such as mortgages and home equity loans was not a retail or service establishment for purpose of section 207(i)), and Wong v. HSBC Mortgage Corp., 2008 WL 753889 at *7–8 (N.D. Cal. Mar. 19, 2008) (Chesney, J.) (holding that employer which was a bank was not a retail or service establishment entitled to exemption under section 207(i)).

The conclusion in this case is also consistent with the conclusion in Gatto, 442 F. Supp. at 536–42. In Gatto, the court concluded that the definition of "retail or service establishment" in former section 213(a)(2) applied, and assumed *arguendo* that Mitchell was still good law. Id. at 538–39. The court however, found as a matter of fact that, *unlike* the banks, credit companies, and finance companies listed as financial industry establishments in 29 C.F.R. section 779.317, the employer did not "make, buy or sell loans, extend credit, or hold mortgages," and was "not a bank, a savings and loan, a finance, credit, or loan company, or any other kind of financial institution." Id. at 539. Rather, the employer was "loan broker" or "brokerage service" acting as an intermediary between borrowers and financial lending institutions. Id. The fact that the employer's line of business was *related to* other financial institutions did not make the employer a financial institution in its own right. Id. The court in Gatto concluded that the employer was "not a part of the 'financial industry'" as that term was used in Mitchell. Id. Having found that the employer was not expressly excluded from being a "retail or service establishment" by virtue of being a financial institution, the court in Gatto then applied other guidelines and standards set forth in the Department of Labor regulations. Id. at 540–42. Applying these Department guidelines, the court ultimately concluded that the employer was not a "retail or service establishment," section 207(i) exemption applied, and the employee was not entitled to overtime compensation. Id.

8

CONCLUSION

Because it is undisputed that defendant Wells Fargo is a bank that provides a variety of financial products and services, including mortgages, Wells Fargo is not a "retail or service establishment" within the meaning of the exemption under 29 U.S.C. section 207(i). Accordingly, plaintiffs are entitled to overtime pay under 29 U.S.C. section 207(a), insofar as no other exemptions apply. Plaintiffs' motion for partial summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: June 11, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

ENDNOTES

1. Wells Fargo has asserted other exemptions none of which are at issue in the motion before the court.

2. At paragraph 29 of the Interpretative Bulletin, the Department of Labor recognized that although banks and personal loan companies "perform service, it is nevertheless [was the Department's] opinion that establishments engaged in such businesses are not in the ordinary case sufficiently similar in character to retail establishments to be considered service establishments within the meaning of section 13(a)(2)." At paragraph 31 of the Interpretative Bulletin, the Department stated that while "[m]any of the foregoing types of business enterprise (e.g. banks, . . . ) could have been easily designated for specific exemption," the fact that they were not "is another reason for [the Department's] conclusion that such enterprises were not intended to be covered by general language which seems forced and artificial in its application to such cases."

3. Section 11 of the 1949 FLSA amendments altered section 13(a)(2) of the FLSA to exempt "any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' *shall mean* an establishment 75 per centum of whose annual dollar volume of sale of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." (emphasis added).

4. Section 16(c) of the 1949 FLSA amendments stated, "Any order, regulation, or interpretation of the Administrator of the Wage and Hour Division [of the DOL] or of the Secretary of Labor, and any agreement entered into by the Administrator or the Secretary, in effect under the provisions of the Fair Labor Standards Act of 1938, as amended, on the effective date of this Act, *shall remain in effect* as an order, regulation, interpretation, or agreement of the Administrator or Secretary, as the case may be, pursuant to this Act, *except to the extent that any such order, regulation, interpretation, or agreement may be inconsistent with the provisions of this Act, or may from time to time be amended, modified, or rescinded by the Administrator or the Secretary*, as the case may be, in accordance with the provisions this Act." (emphases added).

5. Section 6(g) of the 1961 FLSA amendments read, "Section 7 of [the FLSA] is amended by adding at the end thereof the following new subsection: '(h) No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 6, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." Subsequently, the 1966 FLSA amendments redesignated subsection 7(h) of the Act as subsection 7(i), as it is numbered today. P.L. 89–601, 80 Stat. 830, §§ 402, 204(d)(1).