UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

WELLS FARGO HOME MORTGAGE
OVERTIME PAY LITIGATION.

This document relates to ALL CASES.
_____/

No. MDL 06-01770 MHP

**MEMORANDUM & ORDER**

**Re: Nationwide Plaintiffs' Motion for Acceptance of Consent to Join Forms Received After April 18, 2008**

On October 17, 2007, this court conditionally certified a nationwide collective action in this matter under the federal Fair Labor Standards Act (FLSA), 29 U.S.C., sections 201 *et seq*. The FLSA is an "opt in" regime, under which a class member must affirmatively choose to join the collective action. The court approved a notice to be sent to prospective class members, under which they would have 75 days to return their "Consent to Join" forms. Nationwide plaintiffs ("plaintiffs") now move for acceptance of forms postmarked after the April 18, 2008, deadline. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

This multidistrict litigation arises from four separate actions: Mevorah v. Wells Fargo Home Mortgage, Inc., No. 05-1175 (N.D. Cal.), Perez v. Wells Fargo Mortgage Co., No. 05-2722 (N.D. Cal.), Perry v. Wells Fargo Home Mortgage, Inc., No. 05-890 (S.D. Ill.), and Miles v. Wells Fargo Home Mortgage, No. 06-1991 (N.D. Cal.). Among other claims, all four actions assert that

defendant Wells Fargo Home Mortgage ("defendant") has failed to pay overtime to certain home mortgage consultants in violation of the FLSA. On June 15, 2006, the Judicial Panel on Multidistrict Litigation centralized these cases in this court pursuant to 28 U.S.C., section 1407. Porter Dec., Exh. K.

On January 24, 2008, the court approved a notice to be sent to potential members of the nationwide class. See Docket Entry 103. Individuals choosing to opt in as FLSA class members were required to return a Consent to Join form, postmarked no later than April 18, 2008. This deadline conformed to the court's order that class members should be given 75 days to return their forms. Porter Dec., Exh. B at 22. Defendant asserts and plaintiffs do not deny that approximately 4,100 individuals timely postmarked forms, while at least 350 individuals postmarked their signed forms after the deadline. No late-filer has submitted a declaration explaining why he or she missed the April 18, 2008, deadline.

On August 4, 2008, the parties met and conferred but were unable to reach agreement on acceptance of the late-filed forms.

LEGAL STANDARD

The court has broad discretion to set a cutoff date for the filing of consent forms, as well as to extend such dates, to ensure that an action will proceed in a diligent fashion. See Hoffman-LaRouche, Inc. v. Sperling, 493 U.S. 165, 169-72 (1989) (holding that a district court has discretion to facilitate notice to potential age discrimination plaintiffs).

DISCUSSION

Defendants rightly point out that plaintiffs have failed to provide a concrete excuse for the late filings. However, the FLSA's remedial purposes and the imperatives of judicial economy are hardly served by excluding numerous class members who would either forfeit their claims or file duplicative suits.

2

1  Defendant relies upon two cases in which courts denied motions to allow the late filing of
2  consent forms because the plaintiffs had not shown "good cause" for the late filing. In Moya v.
3  Pilgrim's Pride Corp., 2006 WL 3486739 (E.D. Pa. 2006), the court stated that courts considering
4  such requests "have generally subjected each request to a general 'good cause' analysis." Moya
5  at *1. In that case, the plaintiffs requested the acceptance of eight late-filing members, and the court
6  found that three of these individuals had shown good cause for their tardiness, while five had not.
7  Id. at *2. A long delay in receiving the notice caused by the circumstances of incarceration was
8  considered "good cause," while a recipient's misplacing of the letter among "junk mail" was not. Id.
9  Similarly, Ayers v. SGS Control Services, Inc., 2007 WL 3171342 (S.D.N.Y. 2007), applied a "good
10 cause" standard to deny two untimely filings while accepting seven. In both Moya and Ayers, the
11 litigant requesting the addition of late-filers provided affidavits from those individuals to
12 demonstrate the reasons for their tardiness. Plaintiffs have submitted no such affidavit in this case.

13  Plaintiff has pointed to several factors that distinguish Moya and Ayers from the instant case.
14 In particular, the instant case is a multidistrict litigation in which any subsequent class actions are
15 likely to be centralized in this court. This case also involves closely-related FLSA and state claims,
16 which are sensibly tried together. Moreover, the number of class members at issue is two orders of
17 magnitude greater than in Moya and Ayers, meaning that undertaking to discern whether each of the
18 350 late-filers has "good cause" would require a significantly greater commitment of litigant and
19 judicial resources than in those cases.

20  In these circumstances, a rigid application of a "good cause" test does not fully respond to
21 the various factors with which the court must concern itself. The Eighth Circuit has spoken to how
22 courts should treat deadlines in the FLSA context:

> The FLSA should be given a broad reading, in favor of coverage. It is a remedial statute that "has been construed liberally to apply to the furthest reaches consistent with congressional direction." . . . A generous reading, in favor of those whom congress intended to benefit from the law, is also appropriate when considering issues of time limits and deadlines.

26 Kelley v. Alamo, 964 F.2d 747, 749-750 (1992), citing Mitchell v. Lublin, McGaughy & Assocs.,
27 358 U.S. 207, 211 (1959).

3

1  In light of the need to give the FLSA a broad reading, the case that is more applicable to the instant
2  motion is Raper v. Iowa, 165 F.R.D. 89 (S.D. Iowa 1996) (extending the FLSA opt-in period to
3  include seven officers who had been promoted into the group at issue in the suit after the action was
4  filed).[1]  In that case, the court examined the factors of judicial economy and prejudice to the
5  defendant.

6  Plaintiffs' counsel stated during oral argument that the bulk of the 350 late-filed forms at
7  issue were postmarked within a month of the April 18, 2008, deadline.  In this case, judicial
8  economy would be served by allowing the class members who postmarked their forms on or before
9  May 18, 2008, to join the class.  It is relatively likely that this number of claims would, if not joined
10 to this action, spawn a separate class action.  See Raper at 92 ("Were the Court to deny the motion,
11 the additional plaintiffs state they would be compelled to file a separate action which, in all
12 probability, would be consolidated with this one.") (citation omitted).  The maintenance of several
13 actions would partially frustrate the underlying rationale for using the class action mechanism.  The
14 present litigation is not very advanced.  Were this not the case, the interest in judicial economy
15 might weigh against granting plaintiffs' motion.  As it is, it weighs in favor of it.

16 Defendant has not shown prejudice that would overcome this interest.  Defendant notes that,
17 under the FLSA, an action accrues for each regular payday on which the employee's paycheck for
18 the pay period in question is issued.  Opp. at 5; see Biggs v. Wilson, 1 F.3d 1537, 1549 (9th Cir.
19 1993).  While the acceptance of the late-filers' forms will toll the statute of limitations for those
20 individuals, this is not the sort of prejudice that is dispositive.  True prejudice in this context might,
21 for instance, consist of "allow[ing] new plaintiffs to join and share the spoils after the battle is won,
22 but sit on the sidelines and remain free from the consequences of an unfavorable outcome."  Id.
23 Whether or not a statute of limitations is tolled is not a persuasive consideration.  Neither is any
24 increase in the potential exposure of the defendant.  As in Raper, the number of putative class
25 members at issue is small, at least relative to the overall class.  See id.  An increase of something
26 significantly less than 350 members to a class consisting of 4,100 individuals constitutes a small

4

increase in class size. At this stage of litigation, accepting these class members causes no unfair surprise to defendant.

The court will also allow individuals who returned forms postmarked after May 18, 2008, to join the class if those class members file declarations, under penalty of perjury, offering an explanation showing good cause for their tardiness. Many tens of thousands of American military service members are deployed abroad, and combat deployment, for example, would be good cause for filing a late notice.

CONCLUSION

Nationwide plaintiffs' motion for acceptance of Consent to Join forms received after April 18, 2008, is GRANTED for forms already filed with the court that were postmarked on or before May 18, 2008. The motion is DENIED for forms postmarked after May 18, 2008. The court will, however, accept forms postmarked after May 18, 2008, where there is a showing of good cause based upon a declaration under penalty of perjury explaining why the individual was unable to postmark his or her form by the April 18, 2008, deadline.

Plaintiff's counsel shall file a declaration listing (1) individuals who postmarked their forms after April 18, 2008, but on or before May 18, 2008, and (2) individuals who postmarked their forms after May 18, 2008.

IT IS SO ORDERED.

Dated: Oct. 22, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

5

# **ENDNOTES**

1. Oddly, plaintiffs failed to cite to this case.