1  Robert W. Thompson, Esq. (SBN 106411)
   Charles Russell Esq. (SBN 233913)
2  CALLAHAN, THOMPSON, SHERMAN
     & CAUDILL, LLP
3  111 Fashion Lane
   Tustin, California 92780-3397
4  Tel:    (949)  261-2872
   Fax:    (949)  261-6060
5  Email: rthompson@ctsclaw.com
   Email: crussell@ctsclaw.com

6  George A. Hanson, Esq.
   Norman E. Siegel, Esq.
7  Eric L. Dirks, Esq.
   STUEVE SIEGEL HANSON LLP
8  460 Nichols Road, Suite 200
   Kansas City, MO 64112
9  816-714-7115 tel
   816-714-7101 fax
10 Email: hanson@stuevesiegel.com
   Email: siegel@stuevesiegel.com
11 Email: dirks@stuevesiegel.com

12 LEAD COUNSEL FOR NATIONWIDE PLAINTIFFS

13

14

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

15

16

| In re: | **MDL Case No.: 3:06-md-1770-MHP** |
|---|---|
| | |
| WELLS FARGO HOME MORTGAGE OVERTIME PAY LITIGATION | **DECLARATION OF ROBERT W. THOMPSON IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF THE SETTLEMENT ON BEHALF OF FLSA CLASS MEMBERS AND DECERTIFICATION AND DISMISSAL WITHOUT PREJUDICE OF THE NATIONWIDE RULE 23 CLASS CLAIMS** |
| This document relates to NATIONWIDE CASES ONLY | Date: August 9, 2010<br>Time: 2:00 P.M.<br>Judge: Hon. Marilyn Hall Patel<br>Courtroom 15 |

17

18

19

20

21

22

23

24

25   / / /

26   / / /

27

28

I, Robert W. Thompson declare as follows:

1.      I am an attorney of record for the Plaintiffs in this action.  I have personal knowledge of the matters set forth herein except for that made on information and belief, and as to those matters, I believe them to be true.  If called upon as a witness, I could and would testify competently thereto.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Settlement Agreement executed by the parties.  Attached to the Settlement Agreement are Settlement Agreement Exhibits 1-A (the Notice to the Rule 23 Class), and Exhibit 1-B (the FLSA allocation formula).

3.      I received my law degree from the University Of San Diego School Of Law; my M.B.A. from the University of Southern California, where I was elected a member of Beta Gamma Sigma; and my Bachelor's degree from California State University Fullerton, where I graduated with honors.  I have been a member of the California Bar since 1982.

4.      I am admitted to the United States District Court for the Central, Southern, Northern and Eastern Districts of California and the Northern and Central Districts of Illinois, and I have been admitted pro hac vice to the United States District Courts for the Eastern District of Pennsylvania, the Southern District of Florida, the Eastern District of Louisiana, the District of Minnesota and the District of Massachusetts as well as various State Courts outside of California.

5       For 20 years I was the senior managing partner and a shareholder with law firm of Callahan, McCune & Willis, APLC. The Callahan firm had approximately 50 attorneys in offices located throughout California.  On August 1, 2009 I formed the law firm of Callahan, Thompson, Sherman & Caudill LLP which has approximately 25 attorneys in offices throughout California.

6.      At the Callahan firms I handled class actions and representative actions exclusively for the past ten years and was the chairperson of the Complex Litigation Department, which consisted of 7 lawyers dedicated primarily to class action litigation.  This Complex

Litigation Department continues as part of the new firm. I have given numerous lectures to clients, educational institutions and other organizations in the areas of unfair business practices, consumer legal remedies, and the procedural mechanisms of class actions and representative actions. I authored the article on "Attention to Detail Crucial in Mediating Class Action Disputes", which was published in the "Orange County Lawyer," Volume Number 5, May, 2004.

7.      I have litigated class action and representative action cases in State and Federal courts. Currently, I serve or have served as lead/ liaison counsel in several class actions including *In re Jamster Marketing Litigation* (MDL No. 1751), *In re Vehicle Lease Document* case, *In re Automobile Advertising case*, *In re Automobile Insurance* case. I have been interviewed by NBC Nightly News, ABC World News Tonight as well as many national publications in connection with many of my class action cases. I have also been involved in the creation of a training video produced by Coastal AMI Training on the Fair Labor Standards Act with special emphasis on Wage & Hour Class Actions. I have also received favorable rulings for my clients in class actions on post certification communications with class members, which was reported in *Parks v. Eastwood Insurance Services* (2002) 235 F. Supp. 2d 1082; and on the definition of "regularly and customarily supervising two or more full time subordinates" which was reported in *Perez v. RadioShack Corp.* (2005) 386 F. Supp. 2d 979.

8.      The Callahan firms, for which I have held the positions of managing partner or managing shareholder over the past twenty years, has extensive experience in the litigation of complex actions, including nationwide class actions incorporating multiple legal standards. We have litigated numerous class actions for plaintiffs and have obtained favorable resolutions in such cases. I was personally involved in the handling of the following cases: 1) *Belazi v. RadioShack*, a class action filed in Orange County Superior Court, recovering $29.9 million on behalf of approximately 1300 employees; 2) *Olivas v. Smart & Final*, a class action filed in Orange County Superior Court, recovering $22 million on behalf of employees; 3) *Hess v. Mervyns*, a class action filed in Orange County Superior Court, recovering approximately $7.5 million on behalf of employees; 4) *Perez v. RadioShack*, a class action filed in the U.S. District

Court for the Northern District of Illinois representing employees of RadioShack in a nationwide class action and received partial summary judgment against RadioShack for over 1000 employees and settled for approximately $9 million along with the companion cases of *Goldman v. RadioShack*, which was filed in the U.S. District Court for the Eastern District of Pennsylvania, and *Lloredo v. RadioShack*, which was filed in the U.S. District Court for the Southern District of Florida, and *Birns v. RadioShack*, which was filed in the U.S. District Court for the Southern District of New York; 5) *Priestley v. Mervyn's*, a class action filed in Orange County Superior Court, recovering approximately $4 million on behalf of employees;  6) *McCarthy v. Seibel Systems*, a class action filed in the U.S. District Court for the Central District of California, reaching a $2.7 million settlement;

7) *Gabel v. Oracle*, a class action filed in the U.S. District Court for the Central District of California, recovering $2 million on behalf of 66 employees (the remainder of this case is currently at the California Supreme Court); 8) *Stanton v. Hot Topic*, a class action filed in Los Angeles County Superior Court, recovering $1.67 million on behalf of employees;  9) *Greditzer v. Infogenesis*, a class filed in Santa Barbara County Superior Court, recovering approximately $1 million on behalf of 58 employees; 10) *Breazier v. Body Shop*, a class action filed in Orange County Superior Court, recovering $500,000 on behalf of employees;  11) *Robbins v. Craftmatic*, a class action filed Orange County Superior Court and recovering $300,000 plus considerable injunctive relief on behalf of consumers;  12) *Batin v. Kaiser Foundation Health Plan*, a class action filed in Alameda County Superior Court,  recovering a $2 million settlement on behalf of the employees; 13) *Strich v. Solstice Capital*, a class action filed in U.S. District Court, Central District of California, Eastern Division, recovering $1.65 million settlement on behalf of the employees; 14) *Wright v. Linkus,* a class action filed in the U.S. District Court, Eastern District of California was settled for $2.5 million on behalf of the employees; 15) *Acosta, et al. v. Trans Union, et al. and Pike v. Equifax Information Systems, LLC*, two consumer class actions pending in the United States District Court for the Central District of California.  Preliminary Approval was recently granted for a $60,000,000.00 settlement on behalf of certain consumers in these and

two other coordinated actions; 16) *Shaw v. Avaya, Inc.*, a class action filed in the Central District of California, resulting in a settlement of $500,000 on behalf of its former employees who were not paid commissions following their terminations; and the *In re Jamster Ringtone Marketing* litigation (MDL No. 1751, Master File No. 05-cv-0819-JM (CAB)), a consumer MDL class action on behalf of a class of several million persons, the settlement of which recently received final approval in the United States District Court for the Southern District of California.

9.     Typically, at any given time, I am responsible, either primarily or in a supervisory capacity, for the litigation of several active class action/collective action lawsuits.  In that capacity and as set forth above, I have taken cases from inception through settlement or to jury trial, when necessary.  I have represented clients on both plaintiff and defense sides of the issues. I believe that I have had sufficient experience upon which to base my opinions relating to the developed stage of this litigation, the burdens and difficulties of proof, the risk of jury deliberations, and the settlement value of cases such as this that went to trial or were settled prior to trial.  Additional information about my qualifications and those of other attorneys at my firm can be found at www.ctsclaw.com.

10.     Counsel for all parties are thoroughly familiar with the complex legal and factual issues of this Litigation.  The Settlement Agreement is the product of intensive, arms-length, adversarial negotiation over the course of more than four years, involving four separate mediation sessions with two different mediators, supported by extensive investigation and directed exchanges of information.  Significant information of the sort developed in discovery was exchanged informally during the course of settlement negotiations.     The Agreement was finally reached during the fourth fully-briefed mediation session that took place before mediator David Rotman.

11.     Litigation of this matter has been marked by vigorous, adversarial and steadfast advocacy of all claims and defenses.  In light of the inherent expense, delay, uncertainty of trial,

and potential appellate issues raised by this case, I believe the Agreement is fair and equitable for all concerned.  I believe this Agreement t is in the best interest of all involved.

12.     This case is complex and carries significant risks for the parties as to both legal and factual issues.  There is no question that litigating the case to trial would require substantial time and expenses in addition to that already expended.  Among the risks faced by Plaintiffs was the uncertainty of maintaining a certified collective action.  The Ninth Circuit reversed the Court's Rule 23 certification of the California Class, and on remand, the Court denied California Plaintiffs' renewed motion for class certification.  Although the standards for certification under § 216(b) of the FLSA are different, there is no doubt that Wells Fargo would vigorously argue that the FLSA collective action should be decertified for the same reasons that doomed the Rule 23 class.  Further, a massive amount of discovery and trial preparation would have been required given the size of the FLSA class (4,570 individuals).  And an expert's sampling of opt ins, analysis and extrapolation of damages would have been lengthy and extremely costly.  All of these factors show that a trial was not on the near horizon, even absent any additional appeals.  Finally, it is very likely that in the event Plaintiffs were to prevail at trial, Wells Fargo would appeal such a result.  It is safe to say that trial preparation, trial and post-trial litigation could consume at least another three years before there would be finality in this litigation that dates back to 2005.

13.     The settlement on behalf of the FLSA Collective Action opt-in plaintiffs provides for a gross recovery of $20 million.  During the course of this litigation, we have developed an estimate of the maximum potential recovery of the FLSA Collective Action plaintiffs of just over $50 million. The settlement amount is, in my experience and opinion, a fair, reasonable, and adequate compromise amount, taking into consideration all the strengths and weaknesses of the case, including the risk of loss, the risk of decertification of the FLSA Collective Action, the protracted length of the litigation to date and the expected continued delay before the case could proceed to trial.

14.     The named plaintiffs have been instrumental in prosecuting this action and achieving the settlement.  Each was an important source of information during the course of this litigation.  The named plaintiffs each educated class counsel and staff in order that they would become better able to develop the facts.  The class would have received no benefit had it not been for the contributions of these individuals.  The named plaintiffs have taken on serious risk in coming forward to name themselves in these lawsuits.  As employees in the troubled mortgage lending industry, by naming themselves in a lawsuit the named plaintiffs faced risks of being ostracized and black-listed.  With respect to Genaro Perez, he was very actively involved in providing extensive information to initiate this case, meeting with counsel and making himself available whenever called upon. He traveled from his home in New Jersey to attend his deposition in San Francisco, and spend a full day preparing for his deposition in addition to the time being deposed.  He was helpful both in responding to discovery and in preparing discovery to be propounded.  (Co-counsel will be providing more information concerning the contributions of the other named plaintiffs.)  Based on their significant contributions to the class and in light of the settlement amount and the other factors, I believe the requested incentive payments of $5,000.00 to each of the Named Plaintiffs is reasonable and well within precedent for cases and settlements of this magnitude.

15.     My firm recovered one third of the common fund in a $29.9 million settlement with RadioShack Corporation in 2002.  Several years later, another judge in the Orange County Superior Court also awarded our firm one third of the common fund of a $22 million class action settlement involving Smart & Final Corp.  We have received awards of 32% and 26% of the settlement fund by two different judges in the United States District Court for the Central District of California in cases involving Oracle Corporation and Seibel Systems.  In the instant action, together with co-counsel, we are applying for a fee award of 25%, which Wells Fargo has agreed not to oppose or object to.

16.     My firm's representation of the interests of the plaintiffs – on a contingency basis alone calling for attorney's fees of one-third of any recovery – has extended for over nearly five

years and has required us to forego significant other work, required the advancement of costs, and has resulted in a decline in the firm's annual income at a time when routine business expenses still had to be met.

17.     The schedule attached hereto as Exhibit 2 is a summary indicating the amount of time spent by the partners, attorneys and paralegal/law clerk staff of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates. Our firm does not maintain billing time records for professional support staff other than paralegals/law clerks, and so that time is not included in Exhibit 2. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm. The time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

18.     The hourly rates included in Exhibit 2 are in line with rates that have been approved in other litigation, most recently by the United States District Court for the Southern District of California in the *In re Jamster Marketing* MDL litigation.

19.     The total number of hours expended on this litigation by my firm as of June 30, 2010, is 2514.6 hours. The total lodestar for my firm is $ 1,433.580.00. My firm's lodestar figures are based upon the firm's current billing rates and hours, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

20.     As detailed in Exhibit 3, my firm has incurred a total of $ $53,989.07 in un-reimbursed expenses in connection with the prosecution of this litigation as of June 30, 2010.

The expenses incurred in this action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

/ / /

1    I declare and affirm under the penalty of perjury under the laws of the United States of

2  America that the foregoing is true and correct and that this Declaration was executed July 26.

3  2010 at Irvine, California.

4

5  _____

6    Robert W. Thompson, Esq., Declarant

7

8  The e-filer has obtained the concurrence of all signatories.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 1**

## SETTLEMENT AGREEMENT

This Agreement ("Agreement" or "Settlement") is entered into by and between plaintiffs Genaro Perez, Derrick Perry and Brenda Miles (the "Named Plaintiffs"), on behalf of themselves and as representatives of the FLSA Class described herein, and defendants Wells Fargo Bank, N.A. and Wells Fargo & Co. (collectively "Defendants" or "Wells Fargo"). The Named Plaintiffs and Defendants are collectively referred to herein as "the Parties."

## FACTUAL BACKGROUND AND RECITALS

1.      Several separate wage and hour actions were brought against Wells Fargo on behalf of current and former loan originators, otherwise known as Home Mortgage Consultants ("HMCs"). The cases are: *Mevorah v. Wells Fargo Home Mortgage, Inc.*, N.D. Cal. 3:05-1175; *Perez v. Wells Fargo Mortgage Co.*, N.D. Cal. 3:05-2722; *Perry v. Wells Fargo Home Mortgage, Inc.*, S.D. Ill. No. 3:05-890; and *Miles v. Wells Fargo Mortgage Company*, N.D. Cal., 3:06-CV-01991.

2.      On June 15, 2006, the Judicial Panel on Multidistrict Litigation transferred these actions pursuant to 28 U.S.C. § 1407 to the United States District Court for the Northern District of California ("the Court").

3.      The consolidated cases were brought on behalf of two subgroups of HMCs. The first group consists of current and former HMCs who worked in California ("California Plaintiffs"). The second group consists of current and former HMCs who worked in the United States, but outside of California ("Nationwide Plaintiffs"). This settlement involves the Nationwide Plaintiffs only.

4.      On October 18, 2007, the Court issued two orders regarding the Nationwide Plaintiffs: (i) the Court certified a Rule 23 class based on the alleged violation of the California Unfair Competition Law ("the Nationwide Rule 23 Class"), and (ii) the Court certified a § 216(b) FLSA collective class based on the alleged violation of the Fair Labor Standards Act ("the FLSA Class"). Also on October 18, 2007, the Court issued a similar but separate order certifying the California Plaintiffs as a Rule 23 class.

1

5.      A notice approved by the Court was sent to members of both the Nationwide Rule 23 Class and the FLSA Class in February 2008.  Following notice, and after excluding individuals who returned exclusion forms, the Nationwide Rule 23 Class consisted of approximately 23,561 individuals.  Approximately 4,570 of these individuals returned consent to join forms and are also part of the FLSA Class.

6.      Shortly after the Court issued its orders certifying the California and Nationwide Rule 23 classes, Wells Fargo filed an appeal of both decisions pursuant to Fed. R. Civ. P. 23(f).  On July 7, 2009, the United States Court of Appeals for the Ninth Circuit reversed the Court's order certifying the California Plaintiffs.  On remand, the Court denied class certification to the California Plaintiffs.  Because a threshold issue – specifically, whether the California Unfair Competition Law may be applied to non-California workers – is pending before the California Supreme Court in *Sullivan v. Oracle Corp.*, Cal. Sup. Court Case No. S170577 (4/22/09), the Ninth Circuit has not ruled on Wells Fargo's appeal of the Court's order certifying the Nationwide Rule 23 Class.

7.      The Parties mediated this case on four separate occasions.  The last three mediations were conducted with David Rotman of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder in San Francisco.  At the conclusion of the most recent mediation on May 7, 2010, Mr. Rotman made a mediator's proposal that was accepted by the Parties and the Parties thereafter executed a Settlement Term Sheet.

8.      The Named Plaintiffs and Class Counsel (as defined hereafter) believe that the claims asserted in the Lawsuit (as defined hereafter) have merit.  The Named Plaintiffs and Class Counsel, however, recognize and acknowledge the significant procedural hurdles, expense and length of continued proceedings necessary to prosecute the litigation against Defendants through trial and appeal.  The Named Plaintiffs and Class Counsel are also mindful of the inherent problems of proof and possible defenses to the Alleged Claims (as defined hereafter).  After careful consideration, including multiple mediations, the Named Plaintiffs and Class Counsel have concluded that it is desirable that this lawsuit be settled in the manner and upon the terms

and conditions set forth in this Agreement.  Both the Named Plaintiffs and Class Counsel believe that the settlement set forth in this Agreement is fair, reasonable and adequate and confers substantial benefits upon the Settlement Class.

9.    The Parties are sufficiently familiar with the facts of the Lawsuit and the applicable law so as to warrant settlement at this time.  The Parties have engaged in significant discovery in order to evaluate the relative strength of the Parties' claims and defenses, including the exchange of documents, written interrogatories, and depositions of Plaintiffs and corporate representatives.  Through the discovery process, Plaintiffs obtained, among other documents and testimony, electronic payroll, time and employment records of the class members.  The Parties also conducted significant motion practice and briefing in this case, including a motion to dismiss, a motion for partial summary judgment, a motion for class certification and collective action certification, and appeal briefing in the Ninth Circuit.  The Parties mediated the case on four occasions.  In furtherance of the mediations, the Parties exchanged additional information, data and documents necessary to fully and fairly evaluate the claims of class members.  Further, Class counsel obtained a significant amount of relevant information regarding the compensability and value of class claims through written correspondence and internal surveys, as well as telephone and in-person interviews with the numerous opt-in Plaintiffs throughout the litigation.

10.    The Parties are represented by competent counsel and have had the opportunity to consult with counsel prior to the submission of this Agreement to the Court.

11.    Nothing in this Agreement, nor the fact of the Agreement itself, shall be construed or deemed an admission of liability, culpability, negligence or wrongdoing of any kind on the part of Defendants with respect to the Alleged Claims or with respect to the class action or collective action.  Defendants deny all the claims and contentions alleged by the Named Plaintiffs in the Lawsuit.  Nonetheless, Defendants have concluded that further litigation would be protracted and expensive, and would also divert management and employee time.  Defendants have taken into account the uncertainty and risks inherent in litigation, especially in multi-party

cases.  Defendants therefore have concluded that it is desirable that the Lawsuit be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement.

        12.    Pursuant to Federal Rules of Evidence 408 and California Evidence Code Sections 1119 and 1152, this Agreement and any related documents filed or created in connection with it shall be inadmissible in evidence in any proceeding, except as necessary to approve, interpret or enforce this Agreement.

<b><u>TERMS OF AGREEMENT</u></b>

        NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the Named Plaintiffs, for themselves and the FLSA Class (as defined hereafter), and Defendants that the Released Claims (as defined hereafter) shall be finally and fully compromised, released, resolved, relinquished, discharged and settled, and the Lawsuit shall be dismissed in accordance with Paragraph 2 of this Agreement, and without any adverse findings or conclusions against Defendants or anyone else, upon and subject to the terms and conditions of this Agreement, as follows:

**1.**      **<u>DEFINITIONS</u>**

        As used in this Stipulation, the following terms shall have the meanings specified below:

        1.1    "Alleged Claims" shall mean the claims that were alleged in Lawsuit, including, but not limited to, claims that the Class Members were not paid all wages, including overtime, entitling them to damages, statutory penalties, restitution, penalties, interest, attorneys' fees, costs, injunctive and other equitable relief under state and federal law.

        1.2    "Class Information Spreadsheet" means an electronic file with the name, social security number, employee identification number, telephone number, and last known address of all Rule 23 Class Members, in addition to the following for FLSA Class Members: (i) the number of weeks worked for Wells Fargo as an HMC between February 10, 2001, and the date of this Agreement, and (ii) the monthly average rate of pay based on aggregate earnings for each FLSA Class Member while an HMC.

4

1.3     The "Court" means the United States District Court, for the Northern District of California, the Honorable Marilyn Hall Patel, currently presiding, or any other court that obtains competent jurisdiction over the Lawsuit.

1.4     "Defendants" means Wells Fargo Bank, N.A. and Wells Fargo & Co.

1.5     "Class Counsel" means Stueve Siegel Hanson LLP and Callahan Thompson Sherman & Caudill LLP.

1.6     The "FLSA Class" or "FLSA Settlement Class" means the approximately 4,570 individuals who filed or returned consent to join forms on or before May 7, 2010.

1.7     The "Class Period" means February 10, 2001 through the date of this Agreement.

1.8     "Individual Payment" shall mean the settlement allocation for each FLSA Class Member as described in Paragraph 3.4 of this Agreement.

1.9     "Lawsuit" means the action styled *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, MDL Docket No. 1770, the Honorable Marilyn Hall Patel presiding.

1.10    "Nationwide Rule 23 Class" means all persons who worked as Home Mortgage Consultants outside the state of California for Wells Fargo Home Mortgage ("WFHM") or Wells Fargo Bank, N.A. at any time during the Class Period who (i) did not return a timely request for exclusion, and (ii) are not a FLSA Class Member.

1.11    "Net Settlement Fund" means the amount of the Total Settlement Fund available for distribution to FLSA Class Members after deductions for (i) attorneys' fees and costs, (ii) service awards, and (iii) costs of settlement administration;

1.12    "Released Claims" shall have the meaning set forth in Paragraph 5 below.

1.13    "Released Entities" means Wells Fargo Bank, N.A., Wells Fargo & Co. and each and all of their respective past and present parents, subsidiaries, affiliated companies and corporations, and each and all of their respective past and present directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint

venturers, assigns, or related entities, and each and all of their respective executors, successors, assigns and legal representatives.

      1.14  "Total Settlement Fund" is the amount of Twenty Million Dollars ($20,000,000.00) as set forth in Paragraph 2 of this Agreement.

## 2.  **SETTLEMENT FUND**

      2.1  Wells Fargo shall establish a Total Settlement Fund in the amount of Twenty Million Dollars ($20,000,000.00), inclusive of FLSA Class payments, attorneys' fees, costs and expenses, service awards and settlement administrative costs (but excluding Wells Fargo's share of employer payroll taxes), to resolve the Released Claims of FLSA Class Members.  In no event shall Defendants be obligated to pay more than $20,000,000.00 in total settlement of the claims of FLSA Class Members inclusive of FLSA Class payments, attorneys' fees, costs and expenses, service awards and settlement administrative costs (but excluding its share of employer state, federal, and local payroll taxes).

      2.2  Class Counsel will apply for attorneys' fees not to exceed 25% (Twenty Five Percent) of the Total Settlement Fund, as well as a separate amount for costs and expenses, to be paid from the Total Settlement Fund.  Wells Fargo will not oppose or object to such an application.  Payment of these fees, costs and expenses shall constitute Class Counsel's complete consideration for all work performed and all expenses and costs incurred to date and for all work to be performed and expenses and costs to be incurred through the completion of the class litigation and settlement.

      2.3  Class Counsel will apply for service awards for the Named Plaintiffs in an amount not to exceed $5,000 each.  Wells Fargo will not oppose or object to such an application.

      2.4  The Settlement Administrator (as described in Paragraph 3.2) will issue Class Counsel an IRS Form 1099 for the attorneys' fees and costs paid under this Agreement, and shall be or become qualified under state and federal tax regulations to issue and will issue an IRS Form 1099 to plaintiffs receiving service awards under this Agreement.

2.5     If the Court does not approve any portion of the attorneys' fees, costs or service awards agreed-upon in this Paragraph, such funds that are not approved shall be distributed to the Net Settlement Fund.

## 3.     **SETTLEMENT PROCEDURE**

3.1     The Parties will move in a single motion (the "Settlement Motion") for (i) approval of the settlement on behalf of FLSA Class Members and (ii) approval of the Parties' motion for notice of decertification and dismissal, without prejudice, of the Nationwide Rule 23 Class claims.   Within 20 days of the Court's order approving the Settlement Motion, the Nationwide Rule 23 Class Members (i.e., those who did not file or return consent to join forms prior to May 7, 2010) will be mailed notice that the Rule 23 action is being decertified and dismissed without prejudice.   This notice will comply with the requirements of Rule 23 and clearly notify Nationwide Rule 23 Class Members of their rights and the effect of the dismissal. Attached to the Settlement Agreement as Ex. A is the decertification notice that will be presented to the Court.   The final form of the notice will be subject to Court approval. The Nationwide Rule 23 Class Members will have limitations periods for individual California Unfair Competition Law (Business and Professions Code section 17200) claims tolled for an additional 90 days from the date the decertification notice is mailed.

3.2     As soon as practicable, and subject to approval by Wells Fargo (who will not unreasonably withhold its approval), Class Counsel will select a nationally recognized third party settlement administrator ("the Settlement Administrator") to assist the Parties in administering the Settlement, including calculating settlement allocations and mailing payments to FLSA Class Members.

3.3     Wells Fargo shall deposit the Total Settlement Fund plus applicable payroll taxes with the Settlement Administrator within 30 days of Court approval of the Settlement Motion. Within 35 days of approval of the Settlement Motion, the Settlement Administrator shall (i) mail Individual Payments to FLSA Class Members, (ii) mail approved service awards, and (iii) pay

approved attorneys' fees and costs to Class Counsel via wire transfer. Class counsel will be responsible for allocating and distributing attorneys' fees to any other additional counsel for Plaintiffs in a fashion that fairly compensates such counsel for their contribution to the prosecution of the ligation.

3.4    Wells Fargo will provide the Class Information Spreadsheet to the Settlement Administrator and Class Counsel within 5 days of the Court's approval of the Settlement Motion. Within 15 days of the Court's approval of the Settlement Motion, the Settlement Administrator will provide Wells Fargo's counsel and Class Counsel with a spreadsheet of the estimated Individual Payments due to each FLSA Class Member. The Individual Payments due to each FLSA Class Member will be determined by using a settlement allocation formula taking into account weeks worked, rate of pay, and other equitable factors. A minimum payment of One Hundred Dollars ($100.00) will be awarded to all FLSA Class Members. The settlement formula to be used by the Settlement Administrator to calculate Individual Payments is attached to this Agreement as Ex. B. Any modifications to this allocation formula must be agreed to by the Parties.

3.5    One-half of each Individual Payment shall be deemed payment of alleged unpaid wages, subject to appropriate payroll withholdings, and reported on an IRS Form W-2. The remaining one-half of each Individual Payment shall be deemed compensation for alleged liquidated damages pursuant to the FLSA, shall not be subject to payroll withholdings, and shall be reported on an IRS Form 1099. Court-approved service awards will be designated as non-wage payments and reported on an IRS Form 1099.

3.6    If an FLSA Class Member fails to cash his/her settlement check within 180 days of its issuance, and there is no request for a new check within one year of issuance, the money allocated to him/her will be sent to the California Unclaimed Property Division if permitted, and if not permitted, it will be reallocated to a charity of the Parties' choosing. The Parties and the Settlement Administrator will exercise their best efforts to ensure that all FLSA Class Members

receive their checks and that new checks are reissued when appropriate, with any stop-payment and re-issuance charges deducted from the respective FLSA Class Member's share.

**4.       DISMISSAL**

Within thirty-five (35) days of the Court's approval of the Settlement Motion, the Parties will file a joint stipulation dismissing the Lawsuit with prejudice with respect to the FLSA Settlement Class and without prejudice with respect to the Nationwide Rule 23 Settlement Class in accordance with Paragraph 3 above.  The Court will retain jurisdiction over the Settlement to the extent permitted by law.

**5.       RELEASE OF CLAIMS**

5.1       The Named Plaintiffs and the FLSA Class Members, on behalf of themselves, and their heirs, representatives, successors, assigns, and attorneys, hereby compromise, release, resolve, relinquish, discharge and settle each and all of the Released Entities from each of the Alleged Claims and any claims derived from or based upon or related to or arising out of the same factual predicate of the Nationwide Consolidated Complaint, the *Perry* Complaint, the *Perez* Complaint, or the *Miles* Complaint whether known or unknown, that exist in their favor through the date of this Agreement.  Collectively, the claims released by the FLSA Class Members shall be known as the "Released Claims."

5.2       The Released Claims include all claims, asserted or unasserted, by FLSA Class Members arising before or during the Class Period, whether in the nature of claims for damages, liquidated damages, punitive damages, unpaid wages and/or overtime pay, premium pay, pay for non-compliant meal or rest periods, waiting-time penalties, wage statement penalties, interest, attorney's fees, costs or injunctive relief or other penalties or remedies that were or could have been asserted out of, relating to, or in connection with any type of actual or alleged violation of any wage and hour laws asserted in the *Perry* Complaint, the *Perez* Complaint, the *Miles* Complaint or the Consolidated Complaint, or that arise from the same factual predicate, whether known or unknown, including but not limited to claims for unpaid wages, overtime, non-compliant meal periods, non-compliant rest periods, waiting time penalties, and wage statement

penalties. The Released Claims include all claims that were or could have been alleged in the *Perry* Complaint, the *Perez* Complaint, the *Miles* Complaint or the Consolidated Complaint under the Fair Labor Standards Act and California Business and Professions Code section 17200 or other state laws.

     5.3    "Unknown Claims" means any Released Claims which the Named Plaintiffs or any FLSA Class Member does not know or suspect to exist in his or her favor at the time of the Released Claims which, if known by him or her, might have affected his or her Settlement with and Release of the Released Entities or might have affected his or her decision not to object to this Settlement.

     5.4    With respect to any and all Released Claims, the Parties stipulate and agree that, upon approval of this Settlement, the Named Plaintiffs, the Released Entities, and the FLSA Class Members shall and have, by operation of the judgment, waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of §1542 of the California Civil Code, which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

The FLSA Class Members shall and have, upon dismissal of their claims, and by operation of the Judgment, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principal of common law which is similar, comparable or equivalent to §1542 of the California Civil Code with respect to the Released Claims.  The Named Plaintiffs or any FLSA Class Member may hereafter discover facts in addition to or different from those which he or she now knows or believes to be true with respect to the subject matter of the Released Claims, but hereby stipulate and agree that the Named Plaintiffs and each FLSA Class Member, upon dismissal of their claims, fully, finally and forever settles and releases any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have

existed upon any theory of law or equity, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule without regard to the subsequent discovery or existence of such different or additional facts.

      5.5    Claims related to employment at Wells Fargo in job categories other than an HMC are not released by this Settlement.

      5.6    Defendants agree that they will bear their own attorneys' fees and costs arising from the Lawsuit.

## 6.    **MISCELLANEOUS PROVISIONS**

      6.1    The Parties will cooperate and take all necessary steps to effectuate final judicial approval of this settlement.  This settlement is contingent upon Court approval of the entire settlement.  Wells Fargo will provide to Class Counsel any information necessary to confirm the fairness of this settlement and the equitable distribution of settlement amounts among FLSA Class Members.  Such information may include, but is not limited to, contact information, social security numbers, dates of employment, compensation data, and related personnel contact information.  The data provided to Class Counsel in advance of and during the May 7, 2010 mediation (specifically the data relating to FLSA Class Member compensation and tenure) will be subject to verification and confirmation.

      6.2    All of the Parties have been represented by counsel throughout all negotiations that preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel.

      6.3    The Parties and FLSA Class Members waive their right to seek any form of appellate review over any order or judgment that is consistent with the terms of this Agreement.

      6.4    This Agreement may not be modified or amended, except in a writing that is signed by the duly authorized representatives of all Parties.

      6.5    This Agreement and the exhibits attached hereto constitute the entire agreement between the Parties concerning the subject matter hereof, and supersede and replace all prior negotiations, understandings, memoranda of understanding and proposed agreements, written

and oral, relating thereto.  No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of the Agreement unless made in writing and signed by duly authorized representatives of all Parties.  No waiver of any term, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instance shall be deemed to be or construed as a further or continuing waiver of any such term, provision or condition.

6.6     This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of California, without giving effect to the principles of conflict of laws and shall be subject to the continuing jurisdiction of the Court.  This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

6.7     This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and together shall constitute one and the same instrument.  When each of the Parties has signed at least one such counterpart, this Agreement shall become effective and binding as to all of the Parties as of the day and year last written.  Fax signatures shall be deemed as effective as originals.

6.8     In the event that legal action arises out of this Agreement or is necessary to enforce any of the terms or provisions of this Agreement, the prevailing party in the action shall be entitled to recover its reasonable attorneys' fees and costs.

6.9     Each individual signing this Agreement warrants that he or she has the authority and is expressly authorized to enter into this Agreement on behalf of the party for which that individual signs.

IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing terms and conditions by executing this Agreement as of the date indicated below.

DATED:  JULY _20_, 2010

By _____

WELLS FARGO BANK, N.A. and
WELLS FARGO & CO.

DATED:  JULY___, 2010

_____
Derek Perry

_____
Genero Perez

_____
Brenda Miles

IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing terms and conditions by executing this Agreement as of the date indicated below.

DATED: JULY____, 2010

By: _____

WELLS FARGO BANK, N.A. and
WELLS FARGO & CO.

DATED: JULY____, 2010

~~Derek~~ Perry
DERRICK (DE)
_____
Genero Perez

_____
Brenda Miles

IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing terms and conditions by executing this Agreement as of the date indicated below.

DATED: JULY____, 2010

By: _____

WELLS FARGO BANK, N.A. and
WELLS FARGO & CO.

DATED: JULY _19_, 2010

_____
Derek Perry

_____
Genero Perez

_____
Brenda Miles

IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing terms and conditions by executing this Agreement as of the date indicated below.

DATED: JULY____, 2010

By: _____

WELLS FARGO BANK, N.A. and
WELLS FARGO & CO.

DATED: JULY___, 2010

_____
Derek Perry

_____
Genero Perez

_____
Brenda Miles

**EXHIBIT 1-A**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*, Case No. MDL1770.

**If you are or were a Home Mortgage Consultant employed by Wells Fargo, please read this notice.  The decertification of a class action lawsuit may affect your rights.**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- **Home Mortgage Consultants (also referred to as "HMCs" or "loan originators") sued Wells Fargo claiming that Wells Fargo failed to pay overtime. The Court certified the case as a class action on October 17, 2007.  The Court is now decertifying the case.**

- **The Court is decertifying the Class Action and dismissing the case without prejudice.**  This means that your claims against Wells Fargo will no longer be a part of the class action.  Although the class action will be dismissed, you have the right to file your own individual case against Wells Fargo.  Further, during the pendency of the class action – February 10, 2005 to [90 days after notice is mailed] – the statute of limitations has been tolled on the California Business and Professions Code Section 17200 claim asserted in the case.

- **For Additional Information, visit www.wellsfargoovertime.com.**

**EXHIBIT 1-B**

**Wells Fargo Loan Originators**
**Allocation Formula for FLSA Settlement Class**

"FLSA Class" or "FLSA Settlement Class" means the approximately 4,570 individuals who filed or returned consent to join forms on or before May 7, 2010.

The relevant time period for FLSA class members is February 10, 2001 through [the date of settlement approval].

See the Class Information Spreadsheet with each FLSA Class Member's name, dates of employment and compensation paid during the Class Period.

From the $20,000,000 Gross Settlement Fund, subtract attorney's fees ($5,000,0000) and costs ($____), third party administration fees (not to exceed $___), the "Allocation Correction Fund" ($50,000), and service awards ($15,000). This results in the "Net Settlement Fund."

From the Net Settlement Fund, (1) allocate $100.00 to all FLSA Class Members, and (2) add each "FLSA Class Member's Points" times the "Net Share Per Point." This results in each FLSA Class Member's Individual Payment.

> To determine each "FLSA Class Member's Points" and the "Net Share Per Point:"
>
> (a)   Determine average monthly compensation;
>
> (b)   Multiply Total Months Worked in FLSA Class Period (February 10, 2001 through the date of settlement approval) x Class Member's monthly average compensation, but not to exceed annualized rate of $100,000.00 per year = "FLSA Class Member's Points";
>
> (c)   The Net Settlement Fund divided by the total "Points" for all FLSA Class Members combined = "Net Share Per Point."

**EXHIBIT 2**

**EXHIBIT 2**

**In re Wells Fargo Home Mortgage Overtime Pay Litigation**
**Case No. 3:06-md-1770-MHP**
**United States District Court for the Northern District of California**

CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP
Billing Report
(All records include billing by Callahan Thompson Sherman & Caudill, LLP as well as its
predecessor firm Callahan, McCune & Willis, APLC)

| Name | Position | Rate | Hours | Total |
|------|----------|------|-------|-------|
| Robert W. Thompson | Partner | $675 | 517.5 | $349,312.50 |
| James M. Hansen | Partner | $675 | 9.5 | $6,412.50 |
| Joan E. Trimble | Partner | $675 | 0.6 | $405.00 |
| Kathleen M. Hartman | Partner | $675 | 0.6 | $405.00 |
| Leeh A. DiBello | Sr. Associate | $550 | 5.4 | $2,970.00 |
| Charles S. Russell | Sr. Associate | $550 | 1848.6 | $1,016,730.00 |
| Christine M. Schenone | Sr. Associate | $550 | 75.5 | $41,525.00 |
| Keith D. Kassan | Jr. Associate | $350 | 0.6 | $210.00 |
| Douglas A. Wright | Jr. Associate | $350 | 29 | $10,150.00 |
| Charles V. Amante | Paralegal/Law Clerk | $200 | 19.5 | $3,900.00 |
| Bryan S. Owens | Paralegal/Law Clerk | $200 | 7.8 | $1,560.00 |
| **Subtotal** | | | **2514.6** | **$1,433,580.00** |

**EXHIBIT 3**

**EXHIBIT 3**

**In re Wells Fargo Home Mortgage Overtime Pay Litigation**
**Case No. 3:06-md-1770-MHP**
**United States District Court for the Northern District of California**

CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP
Expense Report
(All records include expenses by Callahan Thompson Sherman & Caudill, LLP as well as its
predecessor firm Callahan, McCune & Willis, APLC)

| **Expense Item** | **Amount** |
|---|---|
| Airfare | $6,075.45 |
| Class Administration | $23,012.97 |
| Conference Call | $84.83 |
| Copying | $603.39 |
| Court Fees | $1,223.16 |
| Delivery Services | $365.10 |
| Deposition Services | $1,319.15 |
| Legal Research | $985.0 |
| Lodging | $3,299.29 |
| Meals | $545.98 |
| Mediation | $14,325.00 |
| Outside Copying | $683.61 |
| Parking | $45.00 |
| Postage | $41.69 |
| Transcript Services | $603.80 |
| Ground Travel | $765.50 |
| Website | $9.95 |
| **Total Expenses** | **$53,989.07** |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2010, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send email notification of such filing(s) to the following:

Lindbergh Porter, Jr.
Richard H. Rahm
LITTLER MENDELSON, PC
650 California Street, 22nd Floor
San Francisco, CA 94108
Email: lporter@littler.com
Email: rrahm@littler.com
PH:     415-433-1940 / Fax: 415-399-8490
ATTORNEYS FOR DEFENDANT

H. Tim Hoffman
Arthur William Lazear
HOFFMAN & LAZEAR
180 Grand Avenue, Suite 1550
Oakland, CA 94612
Email: hth@hoffmanandlazear.com
Email: awl@hoffmanandlazear.com
PH:     510 763-5700 / Fax:

Kevin J. McInerney
MCINERNEY & JONES
18124 Wedge Parkway #503
Reno, NV 89511
Email: kevin@mcinerneylaw.net
PH:     775-849-3811 / Fax:   775-849-3866
ATTORNEYS FOR CALIFORNIA PLAINTIFFS

  /s/ Charles S. Russell
Charles S. Russell, an attorney for
Nationwide Plaintiffs